76 N.J. Super. 246 (1962)
184 A.2d 83
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT J. O'CONNOR, JOHN E. PAKENHAM, JULES BERSIN AND CARL J. DOMINO, DEFENDANTS.
Superior Court of New Jersey, Middlesex County Court.
Decided September 4, 1962.
*247 Mr. Edward J. Dolan, Middlesex County Prosecutor, for plaintiff (Mr. John P. Kozak, of counsel).
Mr. Ishmael Sklarew for defendant John E. Pakenham.
Mr. Albert W. Seaman for defendants Robert J. O'Connor and Carl J. Domino.
Mr. Martin S. Goldin for defendant Jules Bersin.
MOLINEUX, J.C.C.
The defendants were charged in the Municipal Court of the Township of Piscataway with violation of R.S. 39:4-52, which statute provides that "no *248 person shall operate a motor vehicle upon a public highway * * * in a race * * *." The matter was tried in the County Court on the transcript made below.
Initially, defendants claim that there is no evidence that in fact they were racing. Examination of the record discloses that two police officers of the township observed seven cars proceeding in a westerly direction at a rate estimated to be between 50 and 60 miles per hour along an unopened portion of the new so-called East-West Highway, officially designated as Route 287. One of the cars was in advance of the others. The six remaining cars were proceeding two abreast. The driver of the lead car was never apprehended. The drivers of the first pair of cars were the defendants O'Connor and Domino. The remaining four cars reversed themselves and proceeded in an easterly direction. Soon thereafter, the defendants Pakenham and Bersin were apprehended by other police officers a considerable distance from the point where O'Connor and Domino were picked up.
The defendants Pakenham and Bersin suggest that they were not properly identified as among the seven. The court is of the opinion that the evidence is sufficient to reasonably infer that they were among the seven, inasmuch as they were picked up soon after the original contact was made by the police, on a road on which there was no other traffic, there being no method of ingress or egress from the point where the seven cars were observed by the police and the point where said latter two defendants were apprehended. None of the defendants testified in the court below. Where there are facts in evidence concerning acts or conduct which are inculpatory or imputative in some degree of guilt, and which a defendant of his personal knowledge can deny under oath, his failure to do so raises a permissible inference available to the trier of the facts that the defendant could not in truth deny facts so testified to. See State v. Costa, 11 N.J. 239 (1953); State v. O'Leary, 25 N.J. 104 1957); State v. Bassano, 67 N.J. Super. 526 (App. Div. 1961).
*249 All of the defendants argued that there is no proof of racing. Some of the police testified that the cars were in fact racing while others said there was no evidence of racing.
We hold that the final determination of whether or not there was racing is for the court, based upon the evidence as to what was in fact observed by the police without regard to the opinion of the witnesses of the State as to whether or not the facts so testified to constitute proof of racing. Expressed in another way, whether or not there was proof of racing is a conclusion to be drawn from the testimony of the facts observed.
Essentially, the State's case is predicated upon the testimony that the defendants were coming down the road, three waves of them, two abreast, at about 50 or 60 miles per hour.
"Race" is defined in Webster's New International Dictionary (2d ed. 1961) as "to compete in speed," and also "to run swiftly, to move at top speed." Inasmuch as Article 12 of Title 39 regulates authorized rates of speed for the operation of motor vehicles, we conceive that R.S. 39:4-52, in referring to "a race," prohibits a speed contest rather than prohibits the operation of a motor vehicle at top speed. In other words Section 52, in using the term "race," proscribes speed competitions.
Defendants argue that there is nothing from which the trier of the facts can legitimately draw the inference that there was in fact a race as we have thus defined it. They argue that there was no evidence of a starting point or a finishing point, no evidence of a timer or a starter, and no evidence to show that the cars changed their relative positions while observed by the police, and for ought that appears in the evidence the cars in question were not racing but were merely proceeding in formation at a rapid rate of speed.
The court is unwilling to accept this argument. We believe that under all the circumstances of this case, including *250 the location of the incident, the speed with which the cars were going, and their formation, the trier of the facts is justified in inferring that in fact a speed contest was in progress at the time of observation by the police officers. If such inference is justifiable, the failure of the defendants to testify raises a legitimate inference that they could not in truth have denied the conclusion thus drawn. The court is of the opinion that the evidence is sufficient to justify the finding that in fact the defendants were racing.
Defendants also argue that the prohibition of R.S. 39:4-52 is directed to a race upon a public highway, and argue that the locus of the incident is not a public highway within the meaning of the statute. N.J.S.A. 39:1-1 defines a highway as follows:
"`Highway' means the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel."
While not directly applicable, nevertheless the definition of a private road or driveway as given in said section is of interest. The statute defines a private road or driveway as follows:
"`Private road or driveway' means every road or driveway not open to the use of the public for purposes of vehicular travel."
It would thus appear that the distinction between a public highway and a private road or driveway is not based upon the ownership of the fee or the nature of the controlling authority, but rather upon whether or not the road or highway or driveway in question is open to the use of the public for purposes of vehicular traffic.
Defendants argue that inasmuch as admittedly Route 287 was not open for public traffic, it is not a public highway within the meaning of R.S. 39:4-52, and that therefore the statute is not applicable. It is admitted that Route 287 is opened west of the place of the incident.
*251 The State argues that as longitudinally a part thereof is opened for the use of the public, Route 287 is a "highway" within the statutory definition. The defendants reply that the reference in the statutory definition to the opening of a part of the highway appears in the statute in connection with a reference to the width thereof. They contend that a proper interpretation of the statute makes a closed lane a "highway" where other lanes remain open, and that the application of the reference to part thereof as opened should be so limited.
The court accepts the argument of the defendants. There seems no persuasive reason which would induce the Legislature to make legal a race on a closed highway, none of which is open to the public, and yet make illegal a race on an otherwise closed highway where a part thereof is open a considerable distance away from the closed part. Obviously the racing on a closed lane of a highway would endanger so much of the public as may be traveling on the open lanes, whereas the racing on a highway, all of the lanes of which are closed, would not endanger the public traveling on a portion of such highway open at a site other than where the racing took place.
The court is of the opinion that as Route 287 at the point of the racing was entirely closed to travel, it was not a public highway within the meaning of R.S. 39:4-52, and that the defendants therefore did not violate said statute.
Defendants' counsel are requested to submit orders in conformity with this opinion.