### RAYMOND ARTEMUS WALMSLEY *v.* STATE OF MARYLAND

[No. 760, September Term, 1976.]

*Decided March 8, 1977.*

The cause was argued before GILBERT, C. J., and MOYLAN and LISS, JJ.

*Robert Valliant Jones* for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donaldson C. Cole, Jr., State's Attorney for Cecil County,* and *John L. Scarborough, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The automobile is both praised and damned, recognized as a popular common form of rapid transportation, a public as well as private necessity, and simultaneously accused of being a major air polluter. It has brought hours of untold pleasure to many but pain, misery, anguish and death to others. Regardless of how it is viewed, there are some persons who are as addicted to sitting behind a steering wheel as narcotics users are to dope.

This appeal arises because of Raymond Artemus

Walmsley's seeming inability to refrain from driving a motor vehicle notwithstanding that his privilege to do so has been revoked by the Commissioner of Motor Vehicles. In fact, the instant case arises from Walmsley's fifth conviction for driving on a suspended, revoked or refused operator's license.

Walmsley was convicted by a jury in the Circuit Court for Cecil County of "skidding, spinning of wheels and excessive noise," Md. Ann. Code art. 66$\frac{1}{2}$, § 11-1117, and driving while his license was "canceled, suspended, refused or revoked." Md. Ann. Code art. 66$\frac{1}{2}$, § 6-303. He was fined five hundred dollars ($500) for the "spinning of wheels" offense, which fine was suspended, and he was committed to the county jail for one hundred seventy-nine (179) days for violating § 6-303.[1]

Before this Court, Walmsley asserts:

"I. A private parking lot is not a 'public highway' under Article 66$\frac{1}{2}$ Section 6-303.

II. The State does not have the authority to regulate the licensing of motor vehicle operators on private property.

III. The appellant was not using the parking lot as a thoroughfare."

The record discloses that Walmsley drove a 1970 Mustang automobile, the property of another, on a parking lot belonging to George's Tavern, in Elkton. Patrolman Smith of that town's police force was on "stake out" near the tavern. His purpose in being there was "in regards to the larceny of CB sets." While there, he saw two men exit the bar and enter a Mustang. Smith said, "[T]he driver of the Mustang put the car in reverse and squealed wheels back and continued squealing wheels east bound in the parking lot and then north bound [still on the parking lot] to the side of George's Tavern. . . ." Smith radioed Officer Blake, who

---

1. The "commitment record" states:
"Live in and work out priviledges [sic] granted from 7:30 P.M. to 2:30 A.M. on Fridays and Saturdays."

was stopped coincidentally on the west side of the tavern parking lot. Officer Blake told the jury that he "started walking back towards the rear of George's. At . . . [that] time a Mustang pulled up and as soon as he observed the police car he stopped, shut the engine off. . . ." Officer Blake identified Walmsley as the driver and then testified that Walmsley said that "he didn't have a license."

Blake charged Walmsley with the two charges upon which Walmsley was convicted and with "Negligent Driving." The jury acquitted Walmsley of the latter charge.

Walmsley related that he drove his friend's car "around in front of the restaurant . . . so no one would bother it because they would see it from the window instead of like on the other side where they steal the tape players." He denied squealing wheels.

The charge of driving on a "canceled, suspended, refused or revoked" license is founded upon Md. Ann. Code art. 66½, § 6-303, which provides:

> "Any person who drives a motor vehicle on any *public highway* of this State at a time his license or privilege so to do is canceled, refused, suspended, or revoked is guilty of a misdemeanor." (Emphasis supplied.)

A "highway" is defined in Md. Ann. Code art. 66½, § 1-132 as

> "the entire width between the boundary lines of every way or thoroughfare of any kind *used by the public for purposes of vehicular travel,* whether actually dedicated to the public and accepted by the proper authorities or otherwise." (Emphasis supplied.)

By way of contrast, a "private road or driveway" is "every way or place in private ownership and used for vehicular travel by the owner and those having express or implied permission from the owner, but not by other persons." Md. Ann. Code art. 66½, § 1-164.

Motor vehicle "Rules of the Road," Md. Ann. Code art.

66½, subtitle 11, apply even on "private property which is used by the public in general," except in Garrett and Somerset Counties. Md. Ann. Code art. 66½, § 11-101 (3). If § 6-303 were embraced within the ambit of subtitle 11, our task would be relatively simple. Alas, that is not the case because § 6-303 falls under subtitle 6, "Drivers' Licenses." We, therefore, are called upon to determine as a matter of law whether one who operates a motor vehicle upon a private driveway, road, or parking lot when his license is canceled, suspended, refused or revoked may be successfully prosecuted for violation of subtitle 6 of the motor vehicle code.[2]

The only case that we have found in which the Court of Appeals has spoken on the subject of private roads is *Snibbe v. Robinson*, 151 Md. 658, 135 A. 838 (1927). There the Court held that a private driveway was not within the definition of public roads or byways.[3] That decision, however, was made before the adoption of Md. Ann. Code art. 66½, § 11-101 or its predecessor.

Other jurisdictions, however, have considered motor vehicle violations on private roads, driveways or parking lots. From a reading of *Kuhn v. Ferry and Hensler*, 91 Cal. App. 2d 805, 206 P. 2d 1 (1949); *Galloway v. Wyatt Metal & Boiler Works*, 189 La. 837, 181 So. 187 (1938); *State v. O'Connor*, 76 N. J. Super. 246, 184 A. 2d 83 (1962); *In re Mayor of New York*, 135 N. Y. 253, 31 N. E. 1043 (1892); *Fieldston Property Owners' Association v. Bianchi*, 29 Misc. 2d 326, 215 N.Y.S.2d 834 (1961); and *St. Louis & S.F.R.R. v. Smith*, 41 Okla. 163, 137 P. 714 (1913), it is apparent that the test to be applied is the right of the public to travel on the road, driveway, or parking lot, and not the actual exercise of that right.[4]

---

**2.** Judge Thomsen in Rilling v. Jones, 130 F. Supp. 834 (D. Md. 1955), quashed service of process under the "long arm" features of Md. Ann. Code art. 66½, § 9-301 (then § 113 (a)) when the tort complained of had occurred on a "private dirt driveway leading to plaintiff's home."

**3.** *See also* Atran v. Furness, 251 Md. 216, 246 A. 2d 767 (1968).

**4.** A similar conclusion was reached by the Attorney General of Maryland in 25 Op. Att'y Gen. 420 (1940).

The application of that test has led to the following decisions: *Laubscher v. Blake*, 7 Cal. App. 2d 376, 46 P. 2d 836 (1935), road leading into cemetery held public only because the statute dictated that driveways of "institutions" were public when open to traffic; *Board of Commissioners v. Minnear*, 72 Kan. 326, 83 P. 828 (1905), road which, at public expense, provides a highway by which public goes to and from petitioner's property for either business or pleasure is public; *Galloway v. Wyatt Metal & Boiler Works, supra*, road to oil pumping plant which is used by nearby residents is public; *Merritt v. Stuve*, 215 Minn. 44, 9 N.W.2d 329 (1943), road leading from prison parking lot is private because the use is limited to persons having business within the prison and because it is unsuited for use as a thoroughfare; *Zielinski v. Lyford*, 175 Misc. 517, 23 N.Y.S.2d 489 (1940), driveways leading to public buildings are public while those leading to private buildings are private because the owner can shut them off at any time; *State v. Root*, 132 Ohio St. 229, 6 N.E.2d 979 (1937), hospital driveways are private; *Kitchens v. Duffield*, 83 Ohio App. 41, 76 N.E.2d 101 (1947), army air base driveways, even though constructed at public expense, are private because the use is restricted; *St. Louis & S.F.R.R. v. Smith, supra*, railroad crossing used, not by nearby villagers, but only for the convenience of the railroad, is private.

Turning from roads and driveways to parking lots, we see that the same test is applicable. Thus, in *People v. Korn*, 221 N.Y.S.2d 101 (1961), a county automobile metered parking area was held to be private, as was the roadway within a private shopping center in *Larrivee v. McGann*, 26 Conn. Supp. 508, 227 A. 2d 809 (1967). Several cases have held the parking areas in question to be private and explained that the right to use them by the public was not a general right but rather was limited to those persons who had implied permission to do business with the owner who could exclude any one at any time. *State v. Sims*, 173 N.W.2d 127 (Iowa 1969) (parking lot of drive-in restaurant); *People v. Tracey*, 6 Misc. 2d 681, 167 N.Y.S.2d 320 (1957) (privately

owned parking area of shopping plaza); *Standard Life Insurance Co. v. Hughes*, 203 Tenn. 636, 315 S.W.2d 239 (1958) (gravelled area used by customers of grocery store); *Stanford v. Stanford*, 413 S.W.2d 835 (Tex. Civ. App. 1967) (parking ramp of a department store).

In the instant case, it cannot be questioned but that George's Tavern could have limited the driveway and parking lot to its employees or to its patrons. The public, other than business invitees, had no right to enter upon the driveway or to park their vehicles. It is obvious that driveways and parking lots are not "public" in the sense of the use by all vehicular traffic as a matter of right. We infer that the driveway and parking lot are maintained solely for the convenience of the patrons of the tavern and as such are subject to almost limitless regulation by the owners of the property, to the point that both the driveway and the parking area could be completely eliminated at whim. Thus, the private parking and driveway do not fall within the scope of "used by the public for purposes of vehicular travel," Md. Ann. Code art. 66½, § 1-132. It follows that operating a motor vehicle on a private parking lot, road, or driveway while a license is canceled, suspended, refused, or revoked is not proscribed by the present Maryland motor vehicle code, and Walmsley's conviction under § 6-303 of Article 66½ was wrong. We reverse that judgment.

The conviction of Walmsley for "spinning wheels," Md. Ann. Code art. 66½, § 11-1117, falls into a different category. That section provides:

> "No person shall operate a motor vehicle on or off a highway in any intentional improper manner so as to cause skidding, spinning of wheels, or excessive noise."

Section 11-1117 is within the sphere of the "Rules of the Road." As we have already observed, the legislature has mandated that the "Rules of the Road" are applicable to private property. Md. Ann. Code art. 66½, § 11-101 (3).

Walmsley's conviction for violating § 11-1117 was proper, and we shall affirm it.

> *Judgment of conviction for violation of Md. Ann. Code art. 66¹/₂, § 6-303 reversed.*
> *Judgment of conviction for violation of Md. Ann. Code art. 66¹/₂, § 11-1117 affirmed.*
> *Costs to be paid one-half by appellant and one-half by Cecil County.*