## CHARLES EDWARD AKINS *v.* STATE OF MARYLAND

[No. 738, September Term, 1976.]

*Decided March 8, 1977.*

The cause was argued before POWERS, MOORE and LISS, JJ.

*Victor J. D'Avella, Assigned Public Defender,* for appellant.

*Gilbert H. Robinette, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Edwin H. W. Harlan, Jr., State's Attorney for Harford County,* and *Harold Tulley, Assistant State's Attorney for Harford County,* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

This case should be read in conjunction with *Walmsley v. State,* 35 Md. App. 148 (1976).

The appellant, Charles Edward Akins, was issued a citation charging him with violating Md. Code art. 66½, § 6-303, which proscribes driving a motor vehicle on any *public* highway of the State of Maryland at a time when one's license or privilege to drive has been canceled, refused, suspended, or revoked. The appellant prayed a jury trial in the District Court of Maryland located in Bel Air, Harford County, and the case was transferred to the Circuit Court for Harford County. When the case was called again for trial the appellant entered a plea of not guilty and requested a court trial. The presiding trial judge found the appellant guilty as charged and imposed a suspended sentence of one year in the Harford County Detention Center. It is from this judgment that this appeal was filed.

The sole question before this Court is whether the evidence was sufficient to support the appellant's conviction for driving on a public highway at a time when his driving license was revoked.

The factual situation in this case is relatively simple. Officer Blackburn of the Bel Air Police Department was in the process of investigating a possible larceny from a Salvation Army bin located in a privately owned shopping center. He noticed a motor vehicle, which was being operated near the bin, approach the exit lane leading from the parking lot to U.S. Route 1 adjoining the shopping center. It is conceded that the officer did not see the vehicle being

operated in any area other than the parking lot and the exit lane. The officer stopped the vehicle and found the appellant behind the wheel. Upon further investigation the officer determined that the appellant's driving license had been revoked by the Motor Vehicle Administration. It is conceded that the traffic light on U.S. Route 1, which controls traffic exiting the shopping plaza, is owned and operated by the State of Maryland, and that the State erected and maintains two traffic signs at the exit, i.e., a stop sign and a right turn only sign. It also was stipulated that the portion of the Bel Air Plaza shopping center in which the appellant was observed operating his vehicle is not owned, operated or maintained by the State, County or City of Bel Air.

In *Walmsley, supra,* Chief Judge Gilbert, speaking for this Court, pointed out that Code art. 66½, § 6-303, which prohibits the operation of a motor vehicle *on any public highway* of this State at a time when the operator's license is canceled, refused, suspended, or revoked, comes within the provisions of subtitle 6, "Driver's Licenses" of the Motor Vehicle Code. The issue to be decided is whether one who operates a motor vehicle upon a private driveway, road or parking lot, when his license has been revoked, may be successfully prosecuted for a violation of subtitle 6 of the Motor Vehicle Code. Heretofore, the issue has never been presented squarely to our Court of Appeals or this Court, and we must therefore look to other jurisdictions for assistance. Chief Judge Gilbert in *Walmsley* has diligently and cogently analyzed and discussed a number of decisions in which the problem of motor vehicle violations occurring on private roads, driveways or parking lots was considered by the courts of other states. It would serve no useful purpose to repeat these authorities in this opinion. It is sufficient to note that the rule distilled from a consideration of these cases is that a parking area and its roadways within a shopping center are considered to be private because the right to use them by the public is not a general right, but is limited to those persons who have implied permission to do business with the owner, and that the owner retains the right to exclude anyone at any time.

The use of the parking lot and exit areas in this case was entirely for the convenience of the customers of the owners of the stores in the shopping center. The owner of the center had an absolute right to control the traffic patterns for the use of the areas and could, and undoubtedly did, promulgate rules and regulations as to the manner in which the area could be used. At his discretion the area could be closed or opened as the owner saw fit. It is clear, then, that the area in which the appellant operated his vehicle was not "used by the public for purposes of vehicular travel" within the meaning of Code art. 66½, § 1-132. We hold that operating á motor vehicle on a shopping center parking lot, or any other private parking lot, road, or driveway while a license is canceled, refused, suspended, or revoked is not a violation under § 6-303 of art. 66½ and, therefore, reverse.

> *Judgment of conviction for violation of Md. Code art. 66½, § 6-303, reversed.*
> *Costs to be paid by Harford County.*