942 A.2d 755

**UNITED STATES of America**

v.

**Julian M. AMBROSE.**

**Misc. No. 2, Sept. Term, 2007.**

Court of Appeals of Maryland.

Feb. 20, 2008.

Hollis Raphael Weisman, Asst. U.S. Atty. (Rod J. Rosenstein, U.S. Atty.), on brief, for appellant.

Martin G. Bahl, Staff Atty. (James Wyda, Federal Public Defender for Dist. of Md., Melissa M. Moore, Asst. Federal Public Defender), on brief, for appellee.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned) and DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, J.

We have before us two questions of law certified by the United States District Court for the District of Maryland pursuant to the Maryland Uniform Certification of Questions of Law Act, Md.Code (1974, 2006 Repl.Vol.), §§ 12–601 to 12–613 of the Courts and Judicial Proceedings Article. The questions arise from an appeal of a conviction in the United States Magistrate Court of driving a motor vehicle while the privilege to drive is suspended, a violation of Md.Code (1977, 2002 Repl.Vol.), § 16–303(c) of the Transportation Article. In his appeal before the District Court, the defendant, Julian M. Ambrose, disputes the magistrate judge's interpretation of the modifying phrase "used by the public" in two statutory provisions defining key terms of § 16–303(c): the definition of "highway," § 11–127, and the private property provision, § 21–101.1(b)(1). Md.Code (1977, 2002 Repl.Vol.), Transportation Article.

The District Court has certified the following questions for our consideration:

I. Do the terms "used by the public" contained in the definition of "highway" in § 11–127 and in the private roads provision of § 21–101.1(b)(1) of the Transportation Article of the Maryland Code require the unrestricted *right* of the public to the use of the highway or private property, as opposed to the *fact* of use of a highway or private property by the public?

II. If the terms "used by the public" as contained in the foregoing sections of the Transportation Article require that the public has a right, as opposed to the fact, of use, what level of restrictions, if any, may be imposed on the public before a highway or private property loses its character as one "used by the public?"

In answering the first question, we hold that the phrase "used by the public" contained in the definition of "highway" in § 11–127 and in the private roadway/property provision of § 21–101.1(b)(1) of the Maryland Transportation Article does not require proof of an unrestricted right of the public to use the pertinent highway or private property where the offense allegedly occurred; rather, the proper inquiry involves a factual determination as to the character of the use of the highway or private roadway/property by the public, regardless of the restrictions placed on the public's access or use. Because of our resolution of question I, we need not address the merits of question II.

## BACKGROUND

### A.

### Factual and Procedural History

On June 27, 2005, at approximately 9:15 a.m., Mr. Ambrose was cited for a violation of § 16–303(c) of the Maryland Transportation Article, driving a motor vehicle while his privilege to drive was suspended, as a result of a routine identification check at the Old Farm Road Gate of Fort Detrick. When Mr. Ambrose and his vehicle approached the Fort Detrick entry gate, the civilian security guard assigned to the checkpoint stopped Mr. Ambrose's vehicle and requested to see Mr. Ambrose's identification. Upon receiving Mr. Ambrose's identification, the security guard was unable to determine a date on the card. The security guard then requested the assistance of Officer Thomas S. Plummer, a police officer with the United States Department of Defense, to verify Mr. Ambrose's identification. While waiting for Officer Plummer to arrive, the security guard asked Mr. Ambrose to move his vehicle to a designated area near the security gate to avoid blocking the traffic lanes leading to Fort Detrick.

Officer Plummer responded to the gate and found Mr. Ambrose in the driver's seat of the vehicle. Officer Plummer inspected Mr. Ambrose's identification and, finding "the date on it was a little obscure [and] was kind of hard to read," ran

Mr. Ambrose's identification through the National Crime Information Center database and the Maryland Motor Vehicle Administration database. The results of the database search indicated that Mr. Ambrose's driving privileges were suspended by the State of Maryland. Accordingly, Officer Plummer "took Mr. Ambrose into custody, brought him back to the station, [and] ... gave him [a] ticket." Mr. Ambrose was charged, under the Assimilated Crimes Act, 18 U.S.C. § 13(a), with driving on a suspended license in violation of § 16–303(c) of the Maryland Transportation Article.[1] Officer Plummer then released Mr. Ambrose from police custody.

A trial on the charge of driving while suspended was held before a United States magistrate judge on April 18, 2006, and September 19, 2006. At both the close of the Government's case and the trial, Mr. Ambrose moved for judgment of acquittal, which the magistrate judge denied. The judge then found Mr. Ambrose guilty of the offense. Mr. Ambrose received 18 months of supervised probation with the special condition that he not drive without a valid license, a $725.00 fine, and a $25 special assessment. On September 21, 2006,

---

1. Because Fort Detrick is a United States military installation and a federal enclave subject to the "special maritime and territorial jurisdiction of the United States," *see* 18 U.S.C. § 7, Mr. Ambrose was issued a citation for his violation of Maryland State law pursuant to the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13. The ACA provides, in pertinent part, that any person who is "guilty of any act or omission" within the boundaries of a federal reservation "which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13. In other words, the ACA applies state laws in federal reservations, filling gaps in federal criminal law that apply in federal jurisdictions. *See Lewis v. United States,* 523 U.S. 155, 118 S.Ct. 1135, 140 L.Ed.2d 271 (1998); *United States v. Sharpnack,* 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). *See also United States v. Robson,* 391 F.Supp.2d 383, 386–387 (D.Md.2005) (explaining the constitutional basis and scope of the Assimilative Crimes Act). Thus, under the ACA, § 16–303 of the Maryland Transportation Article is assimilated as a federal offense and made applicable to activities occurring on Fort Detrick.

Mr. Ambrose appealed his conviction to the United States District Court for the District of Maryland.

On March 26, 2007, the United States District Court for the District of Maryland held a hearing on the magistrate judge's decision. On June 15, 2007, the district court judge certified the two above-stated questions of law to this Court pursuant to the Maryland Uniform Certification of Questions of Law Act.

## B.

### Fort Detrick

Fort Detrick is a research laboratory-oriented military installation under the control of the United States Army. The installation is home to several research laboratories and support buildings. The post also contains housing for some employees, recreational facilities, restaurants, stores, park areas, and a community activity center.

The installation is considered a restricted area and is not open to the public. Indeed, the entire perimeter of the installation is protected by a fence, which directs all entry onto the installation through four security gates. A warning sign is posted on each gate declaring the installation's restrictive nature:

### WARNING

### RESTRICTED AREA

THIS INSTALLATION HAS BEEN DECLARED A RESTRICTED AREA BY THE AUTHORITY OF THE COMMANDING OFFICER, IN ACCORDANCE WITH THE PROVISIONS OF THE DIRECTIVE ISSUED BY THE SECRETARY OF DEFENSE ON 20 AUGUST 1954, PURSUANT TO THE PROVISIONS OF SECTION 21, INTERNAL SECURITY ACT OF 1950. UNAUTHORIZED ENTRY IS PROHIBITED. ALL PERSONS AND VEHICLES ENTERING HEREIN ARE LIABLE TO SEARCH. PHOTOGRAPHING OR MAKING

NOTES, DRAWINGS, MAPS OR GRAPHIC REPRESENTATIONS OF THIS AREA OR ITS ACTIVITIES ARE PROHIBITED UNLESS SPECIFICALLY AUTHORIZED BY THE COMMANDER. ANY SUCH MATERIAL FOUND IN POSSESSION OF UNAUTHORIZED PERSONS WILL BE CONFISCATED.

Members of the general public, who are not employees of Fort Detrick, wishing to gain access to the installation are required to report to the 7th Street Gate. When a vehicle not displaying a Department of Defense decal approaches a security gate, the security guard assigned to the gate directs the vehicle to a security lane, where the guard requests the visitor's identification and reason for entry. Any vehicle entering the installation is also subject to a search by the security guard. If the security guard deems the reason for entry acceptable, the visitor(s) may proceed onto the installation. Otherwise, individuals without proper identification and a valid purpose are refused entry.

## C.

### The Maryland Transportation Article

At issue in the instant case is § 16–303(c) of the Maryland Transportation Article, which provides:

(c) *Suspended licenses generally.*—A person may not drive a motor vehicle on any highway or on any property specified in § 21–101.1 of this article while the person's license or privilege to drive is suspended in this State.

The Code defines "highways" as "the entire width between the boundary lines of any way or thoroughfare of which any part is used by the public for vehicular travel, whether or not the way or thoroughfare has been dedicated to the public and accepted by any proper authority." [2] Md.Code (1977, 2002 Repl.Vol.), § 11–127 of the Transportation Article.

---

**2.** On April 24, 2007, approximately two years and two months after the incident which gave rise to the charges in this case, Senate Bill 35 was enacted to modify the definition of "highway" in § 11–127 to include

In addition, Section 21–101.1, entitled "Scope of title," reads as follows:

(a) *In general.*—The provisions of this title relating to the driving of vehicles refer only to the driving of vehicles on highways, except:

(1) As provided in subsection (b) of the section; and

(2) Where a different or additional place specifically is provided for.

(b) *Applicability to private property.*—(1) A person may not drive a motor vehicle in violation of any provision of this title on any private property that is used by the public in general, or in Calvert County, on any private road located within a residential subdivision or community.

(2) A person may not drive a motor vehicle in violation of any provision of this title on any property that is owned by or under the control of this State, or any of its political subdivisions, county boards of education, or community colleges and that is open to vehicular traffic and used by the public in general.

(3) Any person who violates any provision of this subsection is in violation of the law to the same extent and is

---

roadways on federal reservations/installations. *See* 2007 Md. Laws, Chap. 24. It appears that the General Assembly intended to clarify that highways located on property owned, leased, or controlled by the United States are subject to Title 16 offenses, including driving a motor vehicle while driving privileges are suspended. Section 11–127 now reads:

"Highways" means:

(1) The entire width between the boundary lines of any way or thoroughfare of which any part is used by the public for vehicular travel, whether or not the way or thoroughfare has been dedicated to the public and accepted by any proper authority; and

(2) For purposes of the application of State laws, the entire width between the boundary lines of any way or thoroughfare used for purposes of vehicular travel on any property owned, leased or controlled by the United States government and located in the State.

Such a change is prospective and, therefore, does not affect the outcome of our answer to the relevant certified question.

subject to the same penalty as if the motor vehicle were driven on a highway.

Md.Code (1977, 2002 Repl.Vol.).

## DISCUSSION

### Parties' Contentions

The Government contends that the phrase "used by the public" contained in the definition of "highway" (§ 11–127) as well as in the private property provision (§ 21–101.1(b)(1)) requires only that the public in fact use the roadway/property in order for said roadway/property to be subject to the Transportation Article. Specifically, the Government argues that the phrase "used by the public" is clear and unambiguous, and it does not require lengthy or complicated analysis by this Court. Rather, the Government urges that this Court need only look to the plain language to conclude that the words "used by the public" do not reference a requirement that the public have some right to use a roadway. The Government states:

> This logical understanding of the plain language of the statutes is buttressed by the fact that the phrase "used by the public" in both statutes does not distinguish between the use of a roadway by the public by right and use of a roadway of the public by *permission* of the owner. Absent such a distinction in the statutory text, there is no basis for assuming that the phrase "used by the public" means "used by the public by right." Instead, the plain reading of the statutes is that there need only be a showing that the roadway is, in fact, used by the public, even if only with the permission of the owner.

The Government then directs the Court's attention to the entirety of the Transportation Article, asserting that "it becomes even clearer that the actual use of the roadway by the public ... is the linchpin of the phrase in question." Pointing to Section § 21–101.1(b)(1), the Government argues that this section "establishes that the traffic laws apply not only to highways, but also on property that is privately owned but

used by the public;" therefore, "the actual use of the roadway, not the public's unrestricted right to use a roadway, is the crucial and necessary inquiry." To utilize the rights-based test for this inquiry, the Government contends, is to render § 21–101.1(b)(1) without force.

In addition, the Government contends that this Court should not rely on earlier Court of Special Appeals's decisions, namely, *Walmsley v. State*, 35 Md.App. 148, 370 A.2d 107 (1977) and *Akins v. State*, 35 Md.App. 155, 370 A.2d 111 (1977), in answering this question because the Maryland General Assembly amended the statutory provision in question in 1978 to broaden its scope, thereby abrogating those decisions. The Government asserts that the legislative history of the 1978 amendment shows that "the change in the law was, in fact, specifically designed to properly address the 'loophole' cited in" several Court of Special Appeals decisions. Lastly, the government argues that we should also not base our decision on *Locklear v. State*, 94 Md.App. 39, 614 A.2d 1338 (1992), because "the Court of Special Appeals['s decision] was ultimately fact-driven and did not turn on the 'right to travel' test cited in its opinion."

Ambrose counters, asserting that "the phrase 'used by the public' . . . requires that the general public have an unrestricted right to use the pertinent highway or private property in question, meaning that the roadway or property must be open and available for use by all members of the public." Ambrose states: "Interpreting these statutes to require such a right of access is not only consistent with the natural and ordinary meaning of the word 'public,' but is also necessary to avoid rendering statutory language superfluous." Ambrose then argues that the common definitions of the word "public" "suggest that . . . a roadway or private property must be available for use by all citizens of the [S]tate;" therefore, "it is appropriate to conclude that a roadway or private property is 'used by the public' when the road or property is open and available for use by all members of the public." Ambrose points out that not every road available to the public is a public road; otherwise the statutory language contained in

Section 21–101(n), "private road or driveway" would become superfluous.

## Analysis

These questions are matters of first impression for this Court as we have never addressed Sections 11–127 and 21–101.1(b)(1)'s requirement that the highway or private property be "used by the public." This question, however, has been before the Court of Special Appeals on three separate occasions. *See Locklear v. State,* 94 Md.App. 39, 614 A.2d 1338 (1992); *Akins v. State,* 35 Md.App. 155, 370 A.2d 111 (1977); *Walmsley v. State,* 35 Md.App. 148, 370 A.2d 107 (1977). In two of the three cases, *Walmsley* and *Akins,* the Court of Special Appeals overturned the defendants' convictions by interpreting the "used by the public" element of "highway" to depend solely on the right of the general public to use the roadway.[3] We explain.

In *Walmsley,* the defendant appealed his conviction of driving while his license was revoked, asserting that the parking lot in which he was cited was not a public highway under state law. *Walmsley,* 35 Md.App. at 150, 370 A.2d at 108. The

---

**3.** In the third case, *Locklear,* the Court of Special Appeals overturned the defendant's conviction and reaffirmed that the test to be applied in determining whether a roadway/property is "used by the public in general" is whether the public had a right to travel on the roadway/property. In that case, the court reversed Mr. Locklear's conviction of driving while his license was suspended or revoked, holding that the State did not present sufficient evidence to convict him of driving on a public highway or on private property used by the public generally. *Locklear,* 94 Md.App. at 41, 614 A.2d at 1338. The defendant was stopped for driving on dirt mounds on private property marked with a "No Trespassing" sign. *Id.* at 45–46, 614 A.2d at 1340–41. The court reviewed the facts of the case and concluded that the property upon which Mr. Locklear was stopped "was not used by the public in general." *Id.* at 47, 614 A.2d at 1341. The Court noted that the "Agreed Statement of Facts" reveals that the Genstar property on which [the defendant] was driving was marked, "No Trespassing." *Id.* The court then stated: "There is nothing in the 'Agreed Statement of Facts' to establish that the mounds upon which [the defendant] had been driving were used by the public in general." 94 Md.App. at 46, 614 A.2d at 1341. In so holding, the Court of Special Appeals did not acknowledge the General Assembly's 1978 amendment to § 16–303.

Court of Special Appeals agreed with Mr. Walmsley's position, holding that "the test to be applied is the right of the public to travel on the road, driveway, or parking lot, and not the actual exercise of that right." *Id.* at 152, 370 A.2d at 109. Applying the facts of the case to the newly-adopted test, the court stated:

In the instant case, it cannot be questioned but that George's Tavern could have limited the driveway and parking lot to its employees or to its patrons. The public, other than business invitees, had no right to enter upon the driveway or to park their vehicles. It is obvious that driveways and parking lots are not "public" in the sense of the use by all vehicular traffic as a matter of right. We infer that the driveway and parking lot are maintained solely for the convenience of the patrons of the tavern and as such are subject to almost limitless regulation by the owners of the property, to the point that both the driveway and the parking area could be completely eliminated at whim. Thus, the private parking and driveway do not fall within the scope of "used by the public for purposes of vehicular travel," Md.Ann.Code art. 66 1/2, [§ ] 1–132. It follows that operating a motor vehicle on a private parking lot, road, or driveway while a license is canceled, suspended, refused, or revoked is not proscribed by the present Maryland motor vehicle code, and Walmsley's conviction under [§ ] 6–303 of Article 66 1/2 was wrong.

*Id.* at 154, 370 A.2d at 110.

In *Akins,* the intermediate appellate court's companion case to *Walmsley,* the defendant was convicted of driving at a time when his license was revoked after being observed driving on a shopping center parking lot. The defendant appealed, claiming there was insufficient evidence to support his conviction for driving on a public highway at a time when his license was revoked. *Akins,* 35 Md.App. at 155–56, 370 A.2d at 111. The court agreed and reversed the defendant's conviction, emphasizing the rule to be applied in cases regarding a parking area is "that a parking area and its roadways within a shopping center are considered to be private because the right

to use them is limited to those persons who have implied permission to do business with the owner, and that the owner retains the right to exclude anyone at anytime." *Id.* at 157, 370 A.2d at 112. The court then stated:

> The use of the parking lot and exit areas in this case was entirely for the convenience of the customers of the owners of the stores in the shopping center. The owner of the center had an absolute right to control the traffic patterns for the use of the areas and could, and undoubtedly did, promulgate rules and regulations as to the manner in which the area could be used. At his discretion the area could be closed or opened as the owner saw fit. It is clear, then, that the area in which the [defendant] operated his vehicle was not "used by the public for purposes of vehicular travel" within the meaning of Code art. 66 1/2, § 1–132. We hold that operating a motor vehicle on a shopping center parking lot, or any other private parking lot, road, or driveway while a license is canceled, refused, suspended, or revoked is not a violation under § 6–303 of art. 66 1/2 and, therefore, reverse.

*Id.* at 158, 370 A.2d at 112.

In essence, the Court of Special Appeals's cases applied the test of whether there is an unrestricted right of the public to "travel on the road, driveway, or parking lot." *See Walmsley,* 35 Md.App. at 152, 370 A.2d at 109. But, as the Government explained in its argument, the General Assembly amended the statutory language contained in § 16–303 [4] in order to expand

---

**4.** The statutory language at play in the *Walmsley* and *Akins* cases differs from the statutory language contained in the current version of § 16–303. Indeed, there has been a number of changes in this statutory language since 1976.

The charge at issue in *Walmsley* and *Akins,* driving while the privilege to drive is suspended concerned Md.Code (1957, 1976 Repl.Vol.), § 6–303 of Article 66½. Section 6–303 provided: "Any person who drives a motor vehicle on any public highway of this State at a time his license or privilege to do so is canceled, refused, suspended, or revoked is guilty of a misdemeanor." The Code, at that time, defined "highway" as "the entire width between the boundary lines of every way or thoroughfare of and kind used by the public for purposes of vehicular

its scope to include private property. *See* 1978 Md. Laws, Chap. 34. It is clear from the legislative history of House Bill 170 that the General Assembly amended § 16–303 in direct response to the *Walmsley* and *Akins* decisions, in order to close the perceived gap in the law and apply § 16–303 to privately-owned property that is used significantly by the public. *See* 1978 Md. Laws, Chap. 34.[5] The bill file to House Bill 170, for example, reveals a January 17, 1978, letter from William T.S. Bricker, Deputy Administrator of the Maryland Motor Vehicle Administration, to Delegate Joseph Owens, then-Chairman of the House Judiciary Committee, in which Mr. Bricker writes in pertinent part regarding House Bill 170:

> Attached are copies of the Court of Special Appeals['s] opinions in *Walmsley v. State* and *Akins v. State*, for your information.

> A close reading of the opinions would indicate that Section 21–101.1 does apply to Title 21 offenses (Rules of the Road), but would imply that offenses under other titles, and specifically Section 16–303, are not.

---

travel, whether actually dedicated to the public and accepted by the proper authorities or otherwise." Md.Code (1957, 1976 Repl.Vol.), § 1–132 of Article 66 1/2. The Code did not mention private property.

On March 8, 1976, prior to the decisions in *Walmsley* and *Akins*, the General Assembly amended and recodified § 6–303 as § 16–303 of the Transportation Article, effective July 1, 1977. 1977 Md. Laws, Chap. 14. The amended language read: "A person may not drive a motor vehicle on any highway in this state while his license or privilege to drive is refused, canceled, suspended, or revoked." Section 1–132 was also amended and recodified at that time as § 11–127. The amended language read: " 'highway' means the entire width between the boundary lines of any way or thoroughfare of which any part is used by the public for purposes of vehicular travel, whether or not the way or thoroughfare has been dedicated to the public and accepted by the proper authorities or otherwise." Still the Code did not mention private property. The intermediate appellate court in *Walmsley* and *Akins* interpreted § 6–303 of Article 66 1/2 as it was written at the time of Mr. Walmsley's and Mr. Akins's offenses.

5. House Bill 170 amended § 16–303 to read: "A person may not drive a motor vehicle on any highway or on any property specified in 21–101.1 of this article while his license or privilege to drive is refused, cancelled, suspended, or revoked."

Consequently, the bill would properly address the "loophole" cited in these opinions.

In addition, the Maryland Department of Transportation, indicating their support of House Bill 170 in a position paper submitted to the General Assembly, explained that "[t]he bill was introduced at the request of several prosecutors who were unable to obtain convictions of persons charged with operating while suspended or revoked on private property used by the public in general." In essence, by including private property used by the public in general within the scope of the prohibition against driving while the privilege to drive is suspended, the General Assembly effectively abrogated the intermediate appellate court's test and reversed that court's prior holdings in *Walmsley* and *Akins*. Therefore, the *Walmsley* and *Akins* cases have little persuasive authority in the outcome of our decision in the case *sub judice*.

Notwithstanding the legislative history surrounding the 1978 amendment, which confirms our interpretation of § 16-303, we must focus our attention on the plain meaning of the phrase "used by the public" within the context of the statutory provisions under consideration. *See James v. Butler,* 378 Md. 683, 696, 838 A.2d 1180, 1187 (2003) (noting that where there is no ambiguity in the words of a statute, "in the interest of completeness, . . . we may look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account"); *accord Smith v. State,* 399 Md. 565, 578 924 A.2d 1175, 1182 (2007). In *Kushell v. Dep't of Natural Resources,* 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005), we discussed statutory interpretation, stating:

The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology.

In construing the plain language, "[a] court may neither add nor delete language so as to reflect an intent not

evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." Statutory text " 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect.

If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. "If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.' "

(Internal citations omitted.)

Looking to the actual words of the phrase "used by the public," in both the definition of "highway" and the private roads provision of § 21–101.1(b)(1), we may discern the plain and ordinary meaning of that phrase. "Used by the public" clearly does not indicate a requirement that the public have an unrestricted right to access. Rather, the phrase in its most plain reading means the public must (in fact) have traveled upon the roadway/property in some manner.

The overall statutory context of this phrase further solidifies our position. The Court of Special Appeals's analytical framework in *Walmsley* and *Akins* focused on whether the public had the right to travel on the thoroughfare, roadway, or property. Utilizing this inquiry for properties specified in § 21–101.1(b) would, in essence, render the provision superfluous and meaningless. The underpinning of private property is that the owner controls and restricts the access and use of the property. Requiring a private roadway, driveway, or parking lot to have an unrestricted right of use by the public would, in

total, render every private roadway, driveway, or parking lot immune to the motor vehicle laws contained in Title 21.[6] Such a result would be illogical and violate the canons of statutory construction. *See Kushell,* 385 Md. at 577, 870 A.2d at 193 (noting that statutory text should be read so that no word, clause, sentence, or phrase is rendered superfluous but rather with an eye towards harmonizing multiple provisions within the statutory scheme). Instead, the applicable test for determining whether a thoroughfare, roadway, or other property is "used by the public" in conformity with the requirements of either § 11–127 or § 21–101.1(b)(1) is a factual inquiry regarding the nature and extent of the use of the thoroughfare, roadway or property by the public.[7] Whether the public's

---

6. As explained by the District Court in *United States v. Taylor,* 441 F.Supp.2d 747 (D.Md.2006), the adoption of the rights-based test would, in an instant, render the motor vehicle laws found in Title 21 inapplicable to federal enclaves and reservations, including Fort Detrick:

This is particularly true if such an interpretation would have the inimical effect of rendering inapplicable to [Aberdeen Proving Grounds (APG)] nearly the totality of the "rules of the road" codified at Title 21 of the Maryland Transportation Article. This is so because § 21–101.1 states, relevantly, that Title 21 (rules of the road) govern highways and private property used by the public in general. Thus, if the roads of APG are neither "highways" nor "private property that is used by the public in general," then, with the exception of the offenses identified at § 21–901 (reckless, negligent or impaired driving, fleeing or eluding police), the rules of the road would be inapplicable. This would mean that motorist could ignore traffic signs and signals, right of way rules and speeding restrictions without adverse legal consequence.

441 F.Supp.2d at 754.

7. In the case *sub judice,* for example, the court could take into consideration, among other things, where the defendant was actually stopped by the civilian security guard and the military police officer. The analysis may either be broad, encompassing the entire installation, or narrowly-focused, focusing on the actual road on which the defendant was stopped. For example, there is evidence in the record that prior to his citation, Mr. Ambrose was stopped at an entry gate and then asked to pull to a designated area routinely used for vehicle searches. The record indicates that the roadway on which Mr. Ambrose traveled to reach the entry gate is one of four roadways which members of the public as well as Fort Detrick employees transverse to request entry onto Fort Detrick, regardless of whether they are granted access to the

access to or use of the thoroughfare or roadway is restricted in any way by the owner is of no consideration to this inquiry.

While most of the available cases from the federal trial courts interpreting § 16–303 have adopted the Court of Special Appeals's rights-based test for the "used by the public" inquiry,[8] there is one case from the United States District Court for the District of Maryland that did not subscribe to that analytical framework, which is consistent with our view of the appropriate test. *See United States v. Taylor,* 441 F.Supp.2d 747 (D.Md.2006). In *Taylor,* the defendant was convicted of driving a motor vehicle while his privileges to drive were suspended in violation of § 16–303(c). 441 F.Supp.2d at 747. The defendant had been issued the citation during a routine identification check at the Maryland Gate of Aberdeen Proving Grounds. 441 F.Supp.2d at 748. He moved to dismiss the criminal complaint before the magistrate judge that convicted him, asserting that the roads on Aberdeen Proving Grounds are not "highways" or covered by § 21–101.1; and, therefore, he could not have been charged under § 16–303. 441 F.Supp.2d at 748–49. The court rejected the

installation. If an individual is denied entry onto Fort Detrick, the individual is directed to turn around and leave, taking the same roadway out that the driver took to obtain access. While Eileen C. Mitchell, Deputy Garrison Commander of Fort Detrick, testified before the magistrate judge that members of the public are directed to use only one of the entry gates—the 7th Street gate, it is clear from the facts of this case that members of the public, if only occasionally, attempt to gain access onto the installation from the other, non-designated entry gates.

8. *See, e.g., United States v. Robson,* 391 F.Supp.2d 383 (D.Md.2005) (holding that an access road leading to Andrews Air Force Base was not a "highway" under § 11–127 because "the Base Commander retains absolute authority to bar the public from coming onto the base at any time"); *United States v. Patrick,* No. CRIM 05–3950M, 2006 WL 83505 (D.Md. Jan.12, 2006) (holding that the roads on the National Institutes of Health enclave are not "highways" under § 11–127 because the public retains only a privilege to travel, provided he/she has identification and a *bona fide* purpose); *United States v. Collins,* No. CRIM 05–1387, 2006 WL 278548 (D.Md. Jan.31, 2006) (holding that the roads at the National Naval Medical Center are not "highways" under § 11–127 because of the evidence regarding the propriety of access, that is restricted to those that have identification and a *bona fide* purpose).

defendant's argument, holding, as we do here, that the applicable test for determining whether a roadway is "used by the public" is the extent of the public's use. 441 F.Supp.2d at 754. Acknowledging the canons of statutory interpretation, the court then held that adopting the Court of Special Appeals's test would render the private road provisions of § 21–101.1 "surplusage and therefore unnecessary." 441 F.Supp.2d at 753–54. The court noted, "[a] contrary conclusion would not only assume the legislature incorporated an entirely redundant provision into the statute, but would also lead to the absurd and unreasonable result of exempting roads on federal enclaves ... from the most basic traffic safety laws." *Id.* Thereafter, the court reviewed the record, detailing the extent and nature of the public's use of the roads within Aberdeen Proving Grounds. *Id.* The court then concluded that "the roads of [Aberdeen Proving Grounds] are used by the public in general." [9]

We hold that the phrase "used by the public," found in the definition of "highway" contained in § 11–127 and in the private property provision contained in § 21–101.1(b)(1) of the Transportation Article of the Maryland Code, does not require the unrestricted right of the public to the use of the highway or private property in order to render the highway or private property subject to the requirements of § 16–303.

**CERTIFIED QUESTIONS OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE EQUALLY DIVIDED BETWEEN THE PARTIES.**

---

**9.** Also, notably, the Court of Special Appeals, in *Locklear v. State,* 94 Md.App. 39, 614 A.2d 1338 (1992), seemed to implicitly acknowledge the existence of a factual question regarding the extent of public use when the court addressed whether the dirt mounds on private property constituted a private roadway "used by the public in general." The court, in concluding that the defendant's conviction had to be reversed, noted that "there is nothing in the 'Agreed Statement of Facts' to establish that the mounds upon which [the defendant] had been driving were used by the public in general." 94 Md.App. at 46, 614 A.2d at 1341.