992 A.2d 433

**Troy BRIGGS**

v.

**STATE of Maryland.**

No. 56, Sept. Term, 2009.

Court of Appeals of Maryland.

April 12, 2010.

Allison Pierce Brasseaux, Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, Baltimore, MD), on brief for Petitioner.

Gary E. O'Connor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

GREENE, J.

In 2001, Troy Briggs ("Petitioner"), was convicted in the Circuit Court for Baltimore County of distribution of cocaine. Maryland Code (2002, 2009 Supp.), § 5–608(c) of the Criminal Law Article,[1] provides a mandatory sentence, for offenders in Petitioner's situation, if the court finds that, among other things, the offender has been convicted twice previously, on separate occasions, for certain offenses involving controlled dangerous substances. Petitioner had two prior convictions for possession with intent to distribute cocaine. These were offenses involving controlled dangerous substances, they had taken place three weeks apart, and each offense had been charged in a separate statement of charges.[2] The court

---

1. At the time of Petitioner's sentencing, Maryland Code (2002, 2009 Supp.), § 5–608(c) of the Criminal Law Article, was codified as Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Article 27, § 286(d). There are no relevant differences between the former and present statutes, so we shall refer to § 5–608(c) in this opinion.

2. At all times relevant to this case, the Maryland Rules have defined a "statement of charges" as "a charging document, other than a citation, filed in District Court by a peace officer or by a judicial officer." Md.

concluded that § 5–608(c) therefore applied to Petitioner and imposed the sentence that § 5–608(c) mandates.

Petitioner argues that this sentence was illegal. He explains that § 5–608(c) only applies when a defendant has been previously convicted of two offenses, one of which was "committed after there has been a charging document filed for the preceding crime." Accordingly, Petitioner claims that when he committed his second offense on July 17, 1990, an adequate charging document for his first offense on June 25, 1990, had not yet been filed. He acknowledges that the State filed a statement of charges in the District Court for his first offense before he committed his second offense, but he also points out that he could not have been tried in the District Court on the statement of charges. The State ultimately filed a criminal information in the Circuit Court for Petitioner's first offense, but not until after Petitioner committed the second offense.

Petitioner argues that the criminal information filed in the Circuit Court, not the statement of charges filed in the District Court, constituted the "charging document" for his first offense because the District Court did not have jurisdiction to decide his case on the merits. The criminal information filed in the Circuit Court, which did have jurisdiction to decide his case on the merits, was not filed until after Petitioner committed his second offense. Accordingly, Petitioner argues that § 5–608(c) did not apply to him and that he should not have received the enhanced sentence mandated by § 5–608(c). The Circuit Court and the Court of Special Appeals both rejected this argument, concluding that the statement of charges was a "charging document" under § 5–608(c). Similarly, we conclude that the statement of charges was a "charging document" under that statute. We shall therefore affirm the judgment of the Court of Special Appeals.

---

Rule 4–102(j) (2009); *see also* Md. Rule 4–102(i) (1990); Md. Rule 4–102(i) (1987).

## Procedural Background

This case originated in the Circuit Court for Baltimore County, where Petitioner was charged with distribution and possession of cocaine. He was convicted of distribution of cocaine on May 7, 2001, and was subsequently sentenced to a term of 25 years incarceration without the possibility of parole pursuant to former Maryland Code (1957, 1996 Repl.Vol., 2001 Supp.), Article 27, § 286(d), now codified without relevant changes as Maryland Code (2002, 2009 Supp.), § 5–608(c) of the Criminal Law Article. Petitioner later filed a Motion to Correct Illegal Sentence, and the Circuit Court denied that motion. Petitioner noted a timely appeal to the Court of Special Appeals, which affirmed the Circuit Court's judgment in an unreported opinion on March 20, 2009. Petitioner subsequently submitted a petition for certiorari to this Court, which we granted. *Briggs v. State*, 409 Md. 44, 972 A.2d 859 (2009).

## Facts

Petitioner's conviction in the present case was not his first. On June 25, 1990, Petitioner was arrested for possession with intent to distribute cocaine ("Offense One"). He was arrested that same day, a statement of charges was filed in the District Court for Baltimore City the following day, and a criminal information was filed in the Circuit Court for Baltimore City two months later, on August 28, 1990. Petitioner was convicted of Offense One in the Circuit Court on May 10, 1991. Petitioner was also arrested for possession with intent to distribute cocaine ("Offense Two") on July 17, 1990. Petitioner was arrested that same day, a statement of charges was filed the next day, and a criminal information was filed in the Circuit Court for Baltimore City two months later, on September 12, 1990. Petitioner was also convicted of Offense Two in the Circuit Court on May 10, 1991.

The conviction that led to this appeal occurred almost exactly ten years later. On May 7, 2001, Petitioner was convicted of distribution of cocaine, an offense that he committed on March 15, 1999. The trial court held a sentencing

hearing and, on April 10, 2002, imposed a sentence of 25 years incarceration without the possibility of parole. This sentence was based on the trial court's determination that Petitioner was a third-time offender under § 5–608(c), which provides mandatory penalties for individuals who had previously committed two prior offenses involving controlled dangerous substances. The trial court explained:

> Well, for purposes of my decision today it's dictated by the statute, [§ 5–608(c)]. The sentence must be a term of incarceration for 25 years without the possibility of parole. So I mean, I don't have an option on that.

Six years later, Petitioner filed a motion challenging his sentence. He argued that the trial court's decision to impose a mandatory sentence pursuant to § 5–608 was illegal because he had not been previously convicted on "separate occasions," as required by the statute. Under the statute, convictions occur on "separate occasions" if "the second or succeeding crime is committed after there has been a charging document filed for the preceding crime." § 5–608(c)(4) of the Criminal Law Article; *see also McGlone v. State*, 406 Md. 545, 553–61, 959 A.2d 1191, 1195–1200 (2008) (explaining the identification of "two separate occasions" under Maryland Code (1957, 1982 Repl.Vol., 1986 Cum.Supp.), Article 27, § 643B(c), which also provided enhanced punishments for three-time offenders). The statement of charges for Offense One was filed in the District Court before Petitioner committed Offense Two. The criminal information for Offense One, however, was filed in the Circuit Court after Petitioner committed Offense Two. Petitioner argued that the criminal information, not the statement of charges, was the "charging document" for Offense One because it was the document filed in the court with jurisdiction over Petitioner's case. Accordingly, Petitioner concluded that he "did not commit [Offense Two] until after a charging document was filed [for Offense One], thereby making [Petitioner] ineligible for sentencing under [§ 5–608(c)]."

The Circuit Court in the present case denied Petitioner's motion, concluding that the statement of charges filed for

Offense One was a "charging document" for purposes of § 5–608(c)(4). The court explained:

It strikes me that the plain language of the statute allows for exactly what occurred here and that the intent of the statute is that the person be basically on notice of a filing of charges before the commission of the next subsequent offense. On notice can be by way of [a] charging document in the district court as well as a charge brought originally in the circuit court.

. . .

I am saying I think the statute is worded the way it was because the intent was a notice issue, not that the final charges be filed in the court which would ultimately have jurisdiction.

So for those reasons, I do think the statutory prerequisite was met here on the records that were admitted and I will deny the motion.

Petitioner appealed the Circuit Court's judgment to the Court of Special Appeals, which affirmed. The intermediate appellate court agreed with the Circuit Court that the statement of charges filed in the District Court for Offense One was a "charging document" for purposes of § 5–608(c)(4). The Circuit Court explained that "the function of the 'charging document' requirement in the enhanced sentencing statute is not to sort out the respective trial responsibilities of the circuit and district courts but to put potential repeat offenders on notice as to the perils of recidivism." The court also noted that the statute refers "not to 'the charging document' but to 'a charging document,' recognizing, by the use of the indefinite article, the variety of the items referred to." Finally, the court stated that "[w]hat is absolutely dispositive . . . is the definition of 'charging document' provided by the Court of Appeals in the Maryland Rules of Criminal Procedure." The court quoted both Rule 4–102(a) (2009), which includes "a statement of charges" within the definition of a "charging document," and Rule 4–102(j), which states that a " '[s]tatement of charges' means a charging document. . . ." The court

also noted that Maryland Code (2001, 2008 Repl.Vol.), § 1–101 of the Criminal Procedure Article, includes "a statement of charges" within its definition of a "charging document."

Petitioner has presented the following questions for our review:

1. Does a statement of charges filed in the District Court qualify as a "charging document" for purposes of the enhanced penalty provision of former Article 27, § 286(d), which was recodified without substantive change and is now located in § 5–608 of the Criminal Law Article, when the offense for which the defendant was charged in the statement of charges was not within the District Court's jurisdiction?

2. Did the trial court impose an illegal sentence when it sentenced [Petitioner] as a third-time offender under former Article 27, § 286(d), when [Petitioner] committed his second predicate offense before a charging document was filed with respect to his first predicate offense?

We answer the first question in the affirmative and the second question in the negative.

### Discussion

■ The parties agree that the only issue before this Court is whether the statement of charges filed in the District Court for Offense One was a "charging document" within the meaning of § 5–608(c)(4). If we conclude that it was a "charging document," then we should affirm the judgment of the Court of Special Appeals, which upheld Petitioner's sentence. If we conclude that it was not, then we should reverse the judgment of the Court of Special Appeals and remand the case for a new sentencing hearing. Upon our review of the statute, we conclude that the statement of charges filed in this case was a "charging document" under § 5–608(c)(4). Accordingly, we affirm the judgment of the Court of Special Appeals.

■ Section 5–608 of the Criminal Law Article sets forth penalties for engaging in certain prohibited conduct involving controlled dangerous substances. Section 5–608(c) establishes

mandatory penalties for individuals who have been previously convicted of two offenses involving controlled dangerous substances. Section 5–608(c) states, in relevant part:

(c) Third time offender.—

(1) A person who is convicted under subsection (a) of this section . . . shall be sentenced to imprisonment for not less than 25 years and is subject to a fine not exceeding $100,000 if the person previously:

(i) has served at least one term of confinement of at least 180 days in a correctional institution as a result of a conviction under subsection (a) of this section, § 5–609 of this subtitle, or § 5–614 of this subtitle; and

(ii) has been convicted twice, if the convictions arise from separate occasions: [3]

---

3. The parties agree that the "separate occasions" requirement of § 5–608(c)(1)(ii) is applicable to this case, and we agree. There is, however, some ambiguity about that fact, which we should clear up. The original 1988 enactment of § 5–608(c) included the "separate occasions" requirement. See Md.Code (1957, 1987 Repl.Vol., 1988 Supp.), Art. 27, § 286(d)(1). In 1991, the General Assembly revised the statute and, in doing so, removed the "separate occasions" requirement. See Md.Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Art. 27, § 286(d). The General Assembly did not, however, remove the definition of "separate occasions" from the statute. Art. 27, § 286(d)(3). The 1991 codification of the statute, with some unrelated changes, was in effect when Petitioner was sentenced. See Md.Code (1957, 1996 Repl.Vol., 2001 Supp.), Art. 27, § 286(d).

The omission of the phrase "separate occasions" from the statute was a result of poor legislative drafting, not an intent to remove the "separate occasions" requirement from the statute. The legislative history for the 1991 revision makes clear that the statute was revised to include offenses committed under the laws of other states and the District of Columbia. Other changes to the statute were apparently stylistic, as the General Assembly reorganized the statute but generally maintained the language from the pre–1991 version. Nothing in the legislative history suggests that the General Assembly intended to remove the "separate occasions" requirement from the statute. This conclusion is supported by the fact that the General Assembly retained the definition of "separate occasions" and subsequently returned the phrase to the statute. Accordingly, we shall read the 2001 version of the statute as if it included the requirement that the defendant had been convicted on two separate occasions.

1. under subsection (a) of this section or § 5–609 of this subtitle; . . .

(4) A separate occasion is one in which the second or succeeding crime is committed after there has been a charging document filed for the preceding crime.

§ 5–608(c) of the Criminal Law Article.

The parties agree that this statute applies to Petitioner in all respects except for one: they disagree about the meaning of the term "charging document" in § 5–608(c)(4). Petitioner argues that at the time of his conviction in the present case, he had not been convicted of a second offense that was "committed after there [had] been a charging document filed for the preceding crime." § 5–608(c) of the Criminal Law Article. Prior to his conviction in the present case, Petitioner undoubtedly had been convicted of two offenses of the type identified in § 5–608(c)(1). Section 5–608(c)(4), however, requires more. It requires not only that the defendant has been previously convicted of two applicable offenses, but also that he committed the second of those offenses "after there has been a charging document filed for the preceding crime." § 5–608(c)(4) of the Criminal Law Article. The State filed a statement of charges in the District Court for Offense One before Petitioner committed Offense Two; a criminal information for Offense One, however, was not filed in the Circuit Court until after Petitioner committed Offense Two. We must therefore determine whether the statement of charges filed in the District Court was a "charging document" under § 5–608(c)(4).

We explained recently the canons we apply when interpreting a statute:

" 'The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature.' " *Lonaconing Trap Club, Inc. v. Md. Dept. of the Env't*, 410 Md. 326, 338, 978 A.2d 702, 709 (2009) (quoting *Bd. of Educ. v. Zimmer–Rubert*, 409 Md. 200, 21[4], 973 A.2d 233, 241 (2009)). " 'Statutory construction begins with the plain language of the statute, and ordinary, popular understand-

ing of the English language.' " *United States v. Ambrose,* 403 Md. 425, 438, 942 A.2d 755, 763 (2008) (quoting *Kushell v. Dep't of Natural Res.,* 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005)). " '[We] neither add nor delete language so as to reflect an intent not evidenced in the plain language of the statute; nor [do we] construe the statute with forced or subtle interpretations that limit or extend its application.' " *Lonaconing,* 410 Md. at 339, 978 A.2d at 709 (quoting *Ambrose,* 403 Md. at 43[8–3]9, 942 A.2d at 763). "This Court reads the statute as a whole to ensure that none of its provisions are rendered meaningless." *Id.* We will not construe a statute to reach a result " 'that is unreasonable, illogical, or inconsistent with common sense.' " *Id.* (quoting *Zimmer–Rubert,* 409 Md. at 215, 973 A.2d at 242). If the language of the statute is clear and unambiguous, we need look no further than the language of the statute to ascertain the Legislature's intent. *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condominium,* 404 Md. 560, 572, 948 A.2d 11, 19 (2008). When the language of the statute is subject to more than one interpretation, it is ambiguous and we usually look beyond the statutory language to the statute's legislative history, prior case law, the statutory purpose, and the statutory structure as aids in ascertaining the Legislature's intent. *Id.; see also Kortobi v. Kass,* 410 Md. 168, 177, 978 A.2d 247, 252 (2009); *Chesapeake Charter, Inc. v. Anne Arundel County Bd. of Educ.,* 358 Md. 129, 135, 747 A.2d 625, 628 (2000). Where a statute is ambiguous, we also "consider 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' " *Chesapeake Charter, Inc.,* 358 Md. at 135, 747 A.2d at 628 (quoting *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730, 732 (1986)).

*Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC,* 412 Md. 308, 314–15, 987 A.2d 48, 52–53 (2010). We have also explained that "[t]he plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory

scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect." *Kushell,* 385 Md. at 577, 870 A.2d at 193.

We see no ambiguity in the phrase "charging document" as it is used in § 5–608(c)(4). The General Assembly did not define that phrase in § 5–608(c) or elsewhere in the Criminal Law Article, but the plain meaning of the phrase is evident from its common use. The predecessor statute to § 5–608(c) was enacted in 1988. At that time, as now, the Rules of Procedure adopted by this Court defined a "charging document" as including a statement of charges. Md. Rule 4–102(a) (2009); Md. Rule 4–102(a) (1990); Md. Rule 4–102(a) (1987). A statement of charges has long been included in the definition of "charging document"; indeed, the rules from which we derived Rule 4–102(a) also included a statement of charges in the definition of a "charging document." *Howlett v. State,* 295 Md. 419, 423–24, 456 A.2d 375, 378 (1983) (discussing former Rule 702 a and former District Rule 702, which together defined a "charging document" as including a statement of charges). Furthermore, the Maryland Rules defined then, as now, a "statement of charges" as "a charging document." Md. Rule 4–102(j) (2009); Md. Rule 4–102(i) (1990); Md. Rule 4–102(i) (1987). We have also recognized in numerous cases that a statement of charges is a "charging document." *See, e.g., Blake v. State,* 381 Md. 218, 223 n. 3, 849 A.2d 410, 413 n. 3 (2004) (referring to a statement of charges as a "charging document" for purposes of Rule 4–212(e)); *State v. Smith,* 305 Md. 489, 497–99, 505 A.2d 511, 516 (1986) (discussing use of a statement of charges as a "charging document"); *State v. Boozer,* 304 Md. 98, 100, 497 A.2d 1129, 1129–30 (1985) (referring to a statement of charges as a "charging document"); *Busch v. State,* 289 Md. 669, 671–72, 426 A.2d 954, 955 (1981) (same); *Huger v. State,* 285 Md. 347, 348, 402 A.2d 880, 882 (1979) (same). These rules and cases demonstrate that the well-established meaning of "charging document" included a statement of charges when the General Assembly enacted the statute now codified as § 5–608(c).

Nothing in § 5–608(c) suggests that the General Assembly intended to deviate from the well-established meaning of the phrase "charging document." That term is used in § 5–608(c)(4) without any qualification. Notably, the General Assembly did not specify that the "charging document" must be an indictment or a criminal information, that it must be the final charging document filed in the case, or that it must be filed in any particular court. This lack of qualification demonstrates that the General Assembly intended for "charging document" in § 5–608(c)(4) to mean what it was, and is, commonly understood to mean, and that includes a statement of charges. We see nothing in the statute itself that contradicts this conclusion, nor has Petitioner pointed to any such contradictory language in the statute. Accordingly, we conclude that the plain meaning of "charging document" unambiguously includes a statement of charges.[4]

Our inquiry could stop here, as we have concluded that the statute is unambiguous in regard to the meaning of "charging document."[5] We shall nonetheless discuss other evidence

---

**4.** Petitioner contends that the phrase "charging document" is ambiguous because the General Assembly has defined that phrase differently than has the Rules Committee. In 2001, the General Assembly defined "charging document" and included warrants in that definition. Md. Code (2001), § 1–101(b) of the Criminal Procedure Article. The Rules we have adopted, on the other hand, provide the same definition as the General Assembly, except that our definition does not include warrants. Md. Rule 4–102(a) (2009); Md. Rule 4–102(a) (1990); Md. Rule 4–102(a) (1987). We see no relevant ambiguity here. The issue before us is whether a statement of charges, not a warrant, is a charging document. A statement of charges constitutes a charging document under both definitions.

**5.** In *Gargliano v. State*, 334 Md. 428, 442, 639 A.2d 675, 681–82 (1994), we noted cases in which this Court and the Court of Special Appeals have recognized ambiguity in both the predecessor statute to § 5–608(c) and other similarly worded statutes:

This is not the first time that we have had to discern the Legislature's intent in enacting an enhanced penalty statute. *See, e.g., Taylor v. State*, 333 Md. 229, 235–36, 634 A.2d 1322, 1325 (1993) (§ 643B(c) ambiguous as to whether defendant is entitled to parole or suspension of sentence imposed); *Jones v. State*, 324 Md. [32,] 38, 595 A.2d [463,] 466 [(1991)] (§ 286(d) ambiguous as to length of time individual must have actually been confined); *Malcolm v. State*, 314 Md. 221,

that supports the meaning of "charging document" in § 5–608(c)(4) because that evidence further supports our conclusion. In addition, we discuss the matter further to address Petitioner's remaining contentions. The General Assembly has demonstrated explicitly that it views a statement of charges as a "charging document." In 2001, the General Assembly enacted § 1–101(b) of the Criminal Procedure Article, which defines a "charging document" as including a statement of charges. Md.Code (2001), § 1–101(b) of the Criminal Procedure Article. This definition is relevant to our interpretation of § 5–608(c)(4) even though it was enacted several years after the enactment of the statute now codified as § 5–608(c). By enacting § 1–101(b), the General Assembly demonstrated that it understood the phrase "charging document" to include a statement of charges. The General Assembly could have subsequently amended § 5–608(c)(4) to indicate that "charging document" in that statute did not include a statement of charges. The General Assembly instead left "charging document" unmodified in § 5–608(c)(4). There is also no evidence in the legislative history for either § 5–608(c) or § 1–101(b) to suggest that the General Assembly viewed a statement of charges as not constituting a "charging document." [6]

---

234–35, 550 A.2d 670, 676 (1988) (language of then § 286(b)(2) ambiguous with respect to whether defendant who has met predicate requirements for application of statute could be granted parole if sentenced to greater than 10 years); *Montone v. State*, 308 Md. 599, 615–16, 521 A.2d 720, 728 (1987) (§ 643B(b) ambiguous as to whether prior convictions must be separated by intervening periods of incarceration); *see also Taylor v. State*, 333 Md. at 236, 634 A.2d at 1325 (language of § 643B(b) termed "patently inartful," *citing Calhoun v. State*, 46 Md.App. 478, 489–90, 418 A.2d 1241, 1249 (1980), *aff'd*, 290 Md. 1, 425 A.2d 1361 (1981)[,] and *Davis v. State*, 76 Md.App. 775, 783, 548 A.2d 183, 186 (1988), *cert. denied*, 314 Md. 496, 551 A.2d 867 (1989)).

We have resolved the ambiguities in these statutes as they have come to our attention. We see no ambiguity, however, in regard to the phase "charging document" in § 5–608(c)(4).

**6.** The Revisor's Note for § 1–101(b) states explicitly that the General Assembly based its definition of "charging document" on the definition from Rule 4–102(a). Md.Code (2001, 2008 Repl.Vol.), § 1–101(b) of the Criminal Procedure Article. As for § 5–608(c), we noted in *Gargliano*,

If the General Assembly had intended to exclude a statement of charges from the definition of "charging document" in § 5–608(c)(4), the General Assembly could have made that explicit in the legislative history for either § 5–608(c) or § 1–101(b).[7] There is no such suggestion in the legislative history for either statute.

Petitioner nonetheless argues that the statement of charges filed for Offense One did not constitute a "charging document" because it was filed in the District Court. At the time of the offense, the District Court did "not have jurisdiction to try a criminal case charging the commission of a felony," subject to some exceptions. Md.Code (1974, 1989 Repl.Vol.), § 4–302 of the Courts & Judicial Proceedings Article. Offense One was a felony that did not fall into any of the relevant exceptions, so it could not have been tried in the District Court.[8] Instead, the Circuit Court had jurisdiction to try the charge contained in Offense One. A case in the Circuit Court, however, could have been tried only on an indictment, criminal information, or "a charging document filed in the District Court for an offense within its jurisdiction if the defendant is entitled to and demands a jury trial or appeals from the judgment of the District Court." Md. Rule 4–201(c) (1990). In the present case, a criminal information was filed ultimately in the Circuit

---

334 Md. at 442, 639 A.2d at 681, that the legislative history for the original enactment of that statute is "sparse," and we can find nothing in that history that elucidates the meaning of "charging document."

**7.** The language contained in § 5–608(c) appears to have been copied from the violent offender statute that was in effect when the General Assembly enacted the original codification of § 5–608(c). *See* Md.Code (1957, 1982 Repl.Vol., 1987 Cum.Supp.), Art. 27, § 643B(c) (providing a penalty scheme for third-time offenders identical to the original enactment of § 5–608(c)). As discussed in this opinion, the definition of "separate occasion," which includes the phrase "charging document," was added to that statute in 1982. *See* 1982 Md. Laws, Chap. 479. The legislative history for that revision does not indicate the General Assembly's understanding of "charging document."

**8.** The District Court could have held a preliminary hearing in regard to Offense One even though the offense was outside the court's trial jurisdiction. Md. Rule 4–221 (1990).

Court for Offense One, but not until after Petitioner committed Offense Two. Accordingly, Petitioner argues that the criminal information, not the statement of charges, was the "charging document" contemplated by § 5–608(c)(4).

We disagree that the District Court's lack of jurisdiction to try Offense One affects the applicability of § 5–608(c). The plain meaning of the statute includes no limitation on where a charging document must be filed, only that it be filed. As we have explained, a statement of charges is undoubtedly a charging document, and the filing of a charging document is what § 5–608(c)(4) requires. Furthermore, § 5–608(c)(4) does not state that the second offense must have occurred after "the final charging document" was filed in regard to the first offense. Instead, it states that the second offense must have occurred after "*a* charging document" was filed in regard to the first offense. § 5–608(c)(4) of the Criminal Law Article (emphasis added). As in this case, the filing of the first charging document could be the first of multiple charging documents. *See Evans v. State,* 396 Md. 256, 341, 914 A.2d 25, 75 (2006) (explaining that the word "a" is construed "as meaning 'any' and as not restricted to just one"). Nothing in the language of § 5–608(c) suggests that the charging document filed in the District Court for Offense One was not "a charging document" for purposes of § 5–608(c)(4).

The purpose of § 5–608(c) further demonstrates that we should interpret the phrase "charging document" in § 5–608(c)(4) to include a statement of charges. As we explained in *Gargliano v. State,* § 5–608(c) is an enhanced penalty statute that was

enacted with the purpose of identifying defendants who have not reformed their behavior after prior convictions and incarcerating such defendants for a longer period than would otherwise be applicable in order to protect the community and deter others from similar behavior. The means for achieving such deterrence is the provision of fair warning to previous offenders that if they continue to commit criminal acts after having had the opportunity to reform after one or more prior contacts with the criminal justice

system, they will be imprisoned for a considerably longer period of time than they were subject to as first offenders. 334 Md. 428, 444, 639 A.2d 675, 682–83 (1994) (citations omitted). The purpose of § 5–608(c) is therefore to protect the public by deterring potential repeat offenders from committing additional offenses. Petitioner's interpretation of the phrase "charging document" in § 5–608(c)(4) would, however, place an arbitrary limitation on the ability of § 5–608(c) to accomplish that purpose. Under Petitioner's interpretation of § 5–608(c)(4), § 5–608(c) would deter a potential repeat offender from committing additional offenses only after a charging document has been filed in the court with jurisdiction to ultimately hear the potential repeat offender's first offense on the merits. As a result, § 5–608(c) would have no deterrent effect after a charging document is filed in the District Court when, like in the present case, the charged offense could only be tried in the Circuit Court. We can discern no reason why § 5–608(c) should deter potential repeat offenders when a charging document has been filed in the Circuit Court, but not when a charging document has been filed in the District Court. We decline to adopt such an arbitrary limitation on the ability of § 5–608(c) to accomplish its purpose, especially when such an interpretation would conflict with the plain meaning of the statute and all other evidence of the statute's meaning.

The legislative history of § 5–608(c) further supports our interpretation of the phrase "charging document." The General Assembly copied the language contained in the original enactment of § 5–608(c) directly from Maryland Code (1957, 1982 Repl.Vol., 1987 Cum.Supp.), Article 27, § 643B(c). Section 643B(c) provided an enhanced sentence for defendants who had previously committed two crimes of violence. Like § 5–608(c), *see supra* note 3, § 643B(c) only mandated an enhanced sentence for defendants who had been convicted of two previous crimes on "separate occasions." The original enactment of § 643B(c), however, did not define the phrase "separate occasion." *See* Md.Code (1957, 1976 Repl.Vol., 1979 Cum.Supp.), Art. 27, § 643B(c). As a result, § 643B(c) did not

originally mandate an enhanced sentence if a defendant's two previous convictions had come from a single trial, even if both convictions had arisen from separate incidents. *See Calhoun v. State,* 46 Md.App. 478, 490 n. 5, 418 A.2d 1241, 1249 n. 5 (1980) (discussing this interpretation in dicta); *see also Lett v. State,* 51 Md.App. 668, 679–80, 445 A.2d 1050, 1056–57 (1982) (applying this interpretation when affirming the trial court's refusal to impose an enhanced penalty).

In 1982, the General Assembly responded to *Calhoun* by adding a definition of "separate occasion" to § 643B(c). *Garrett v. State,* 59 Md.App. 97, 116–17, 474 A.2d 931, 941 (1984) (citing 1982 Md. Laws, Chap. 479). The revised version of § 643B(c) stated that "[a] separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion." Md.Code (1957, 1982 Repl.Vol., 1983 Cum.Supp.), Art. 27, § 643B(c). This definition "introduced into the statute for the first time as explicit criteria or measuring rods the date of the offense and the date of the charging document." *Garrett,* 59 Md.App. at 117, 474 A.2d at 940–41 (1984). The effect of this was to ensure that convictions for offenses committed during separate incidents would be treated as individual offenses under § 643B(c), even if those two convictions had been handed down in a single trial. *Garrett,* 59 Md.App. at 116–17, 474 A.2d at 940–41. The General Assembly later copied the language contained in § 643B(c) to become the original enactment of § 5–608(c), which included an identical definition of "separate occasion."

This legislative history shows why Petitioner's interpretation of § 5–608(c)(4) is at odds with the General Assembly's intent. Petitioner reads § 5–608(c)(4) as limiting the application of § 5–608(c) to a charging document filed in the court with jurisdiction to ultimately resolve a defendant's case on the merits. Section 5–608(c)(4) is not intended to limit the application of § 5–608(c) in such a way. Quite to the contrary, § 5–608(c)(4) is intended to expand, not limit, the application of § 5–608(c). Section 5–608(c)(4) ensures that two convictions for two distinct offenses are treated as two separate

offenses, even if the convictions for those two offenses were handed down at a single trial. To carry out this intent, § 5–608(c)(4) sets forth the test by which a court, sentencing a defendant for a third offense, determines how many previous convictions the defendant has: if the defendant committed one offense after a charging document was filed for another previous offense, then the court should count the convictions for those offenses as two convictions; if he or she committed one offense before a charging document was filed for another previous offense, then the court should count them as one conviction. As this is the purpose of § 5–608(c)(4), we see no reason to limit the "charging document" requirement in § 5–608(c)(4) to only charging documents filed in the court with jurisdiction to ultimately resolve a defendant's case on the merits.[9]

---

9. Petitioner argues that a statement of charges is not a "charging document" for purposes of § 5–608(c)(4) because it "does not provide the defendant with the type of notice contemplated by the statute." Petitioner makes this argument in response to the Circuit Court and the Court of Special Appeals' conclusion in the present case that "the function of the 'charging document' requirement[,]" in § 5–608(c)(4), is to "put potential repeat offenders on notice as to the perils of recidivism." Petitioner notes that "there is no requirement that the defendant be served with a statement of charges before it is filed" and that "[e]ven if the defendant is served with a statement of charges before he commits another offense, … he is only put on notice that he has committed a crime; he is not put on notice that he faces certain prosecution."

We disagree with Petitioner that notice is an issue in this case. Unlike the Circuit Court and the Court of Special Appeals, we do not conclude that the "charging document" requirement in § 5–608(c)(4) was intended to "put potential repeat offenders on notice as to the perils of recidivism." In drawing that conclusion, the trial court and the intermediate appellate court have conflated the purpose of § 5–608(c), as a whole, and § (c)(4) specifically. Section 5–608(c), as a whole, certainly puts potential repeat offenders on notice of the perils of recidivism by providing enhanced penalties for third offenses. *See Gargliano*, 334 Md. at 444, 639 A.2d at 682–83 (discussing the purpose of § 5–608(c)). The expectation is that the threat of an enhanced penalty will deter repeat offenders from committing third offenses.

The "charging document" requirement in § 5–608(c)(4), on the other hand, serves a separate function. It is aimed not at the offender who is considering whether to commit a third offense, but at the court that is sentencing a defendant who has been convicted for the third time. In

Petitioner further contends that our decision in *State v. Gee,* 298 Md. 565, 471 A.2d 712 (1984), supports his argument that the statement of charges filed for Offense One was not a charging document for purposes of § 5–608(c)(4). In *Gee,* like the present case, a statement of charges was filed in the District Court for a felony that could have been tried only in the Circuit Court. 298 Md. at 577, 471 A.2d at 718. Unlike the present case, the statement of charges had been filed before Gee was arrested, and he was not arrested on those charges until several months later. *Gee,* 298 Md. at 570, 471 A.2d at 714. We concluded that the statement of charges filed in Gee's case was not a "formal charge" for purposes of Gee's

---

that case, the court must count the defendant's previous convictions to determine whether to apply the enhanced penalty provision of § 5–608(c). As we have explained in this opinion, § 5–608(c)(4) accomplishes this function by providing the test that a court applies to determine whether the defendant's second conviction should count as a second conviction for purposes of § 5–608(c) or should be counted together with the defendant's first conviction.

Neither the language of § 5–608(c) nor the statute's legislative history explains why the General Assembly chose to draw the line between first and second offenses at the filing of a "charging document." The reason for that line is nonetheless evident, and it does not involve notice to potential repeat offenders. The original enactment of § 5–608(c)(4) required that the two previous offenses did not "arise from a single incident." *See* Md.Code (1957, 1987 Repl.Vol., 1988 Supp.), Art. 27, § 286(d)(1). The "charging document" requirement provided a useful line between previous offenses because offenses arising from a single incident would likely be charged together, while offenses arising from separate incidents would not. *Cf. Diaz v. State,* 129 Md.App. 51, 85, 740 A.2d 81, 99 (1999) (explaining that the "separate occasion" requirement "treats an 'offense' as a course of events leading to the filing of a charging document, and it clearly implies that multiple *counts* within the same charging document are not treated as separate 'offenses' for the purpose of sentence enhancement").

We should be clear that none of this discussion concerns the general purpose of a charging document. We have explained that "[a] primary purpose to be fulfilled by a charging document under Maryland law is to satisfy the constitutional requirement ... that each person charged with a crime be informed of the accusation against him...." *Jones v. State,* 303 Md. 323, 336, 493 A.2d 1062, 1069 (1985). Our discussion here does not, however, concern the reasons why a charging document must be filed in a particular criminal case. It concerns only the reason why the General Assembly used a "charging document" as the test for determining how many prior convictions a defendant has under § 5–608(c).

Sixth Amendment speedy trial rights and that the time period applicable to those rights began to run at some later time.[10] *Gee,* 298 Md. at 577, 471 A.2d at 718. We came to this conclusion because the statement of charges in that case did "not mark the onset of formal prosecutorial proceedings to which the Sixth Amendment guarantee is applicable, nor [had] the putative defendant thereby become an 'accused.'" *Gee,* 298 Md. at 574, 471 A.2d at 716.

We do not find *Gee* relevant to our decision. *Gee* concerned a particular issue: the Constitutional right to a speedy trial. The right to a speedy trial is primarily concerned with the length of time during which a defendant is "faced with the prosecutorial forces of organized society[ ] and immersed in the intricacies of substantive and procedural criminal law." *Gee,* 298 Md. at 574, 471 A.2d at 716 (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411, 418 (1972)); *see also Ludwig v. Massachusetts,* 427 U.S. 618, 628, 96 S.Ct. 2781, 2787, 49 L.Ed.2d 732, 740 (1976) ("Protection against unwarranted delay, with its concomitant side effects on the accused, of course, is primarily the function of the Speedy Trial Clause of the Sixth Amendment. . . ."). That is a very different issue than the one that § 5–608(c) presents. As we have explained, § 5–608(c) is designed to protect the public by punishing repeat offenders and deterring individuals from committing multiple crimes. *See Gargliano,* 334 Md. at 444, 639 A.2d at 682–83 (discussing the purpose of § 5–608(c)). This punishment and deterrence scheme has nothing to do with the time period that a defendant is faced with prosecution. Furthermore, as we have explained in this opinion, § 5–608(c)(4) is intended to provide a sentencing court with the test for determining how many prior convictions a defendant has for purposes of enhanced sentencing under § 5–608(c). The disparate purposes motivating *Gee* and the statute at

---

**10.** We did not decide whether Gee's right to a speedy trial began to run when he was eventually arrested or when a detainer was filed against him a month before his arrest. *State v. Gee,* 298 Md. 565, 578, 471 A.2d 712, 718 (1984).

issue in the present case show that we simply cannot analogize the reasoning of *Gee* to the present case.

Finally, Petitioner argues that we should apply the rule of lenity and conclude that § 5–608(c)(4) only applies to a charging document filed in the court with jurisdiction to ultimately resolve a defendant's case on the merits. The rule of lenity does not support that result. We apply the rule of lenity to ambiguous penal statutes, and, in doing so, strictly construe the statute against the State and in favor of the defendant. *Gardner v. State*, 344 Md. 642, 651, 689 A.2d 610, 614 (1997). The statute at issue in this case is indeed penal and we have frequently applied the rule of lenity when interpreting it. *Deville v. State*, 383 Md. 217, 231, 858 A.2d 484, 492 (2004); *Melgar v. State*, 355 Md. 339, 347, 734 A.2d 712, 716–17 (1999); *Scott v. State*, 351 Md. 667, 677, 720 A.2d 291, 295 (1998); *Gardner*, 344 Md. at 651, 689 A.2d at 614–15; *Gargliano*, 334 Md. at 437, 639 A.2d at 679. As we have explained, however, the statute is not ambiguous in regard to the phrase "charging document." Even if the statute were ambiguous in that regard, the rule of lenity would not support the result Petitioner advocates. Ordinarily, the rule of lenity applies when the scales are evenly balanced after a court has weighed contradictory interpretations of a statute. *See Randall Book Corp. v. State*, 316 Md. 315, 327, 558 A.2d 715, 721 (1989) (explaining that the rule of lenity applies when "the legislative intent cannot be determined[ ] and the indicia point with equal force in opposite directions"). After weighing the possible interpretations of § 5–608(c)(4), the scales are strongly tipped towards the interpretation we have adopted in this opinion. We therefore conclude that the statement of charges filed in the District Court in this case for Offense One constituted a "charging document" under § 5–608(c)(4) and that the trial court imposed correctly the sentence mandated by that statute.

*THE JUDGMENT OF THE COURT OF SPECIAL AP-PEALS IS AFFIRMED. COSTS TO BE PAID BY PETI-TIONER.*