**Gen. 51]** 51

# EDUCATION

**BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY – SCHOOL BOARD NOMINATING COMMISSION – ALL BOARD MEMBERS APPOINTED BY THE GOVERNOR MUST BE NOMINATED, SELECTED, AND STAND FOR RETENTION REGARDLESS OF WHETHER THEY ARE SEEKING A FIRST OR SECOND TERM**

May 22, 2013

*Andrew C. Pruski*
*President*
*Board of Education Anne Arundel County*

On behalf of the Board of Education of Anne Arundel County ("Board"), you have requested our opinion regarding § 3-110 of the Education Article and its application to incumbent Board members who wish to serve a second consecutive term. Under § 3-110, the School Board Nominating Commission of Anne Arundel County ("Nominating Commission") nominates candidates for any vacancy among the seats that are to be appointed by the Governor. Md. Code Ann., Educ. ("ED") § 3-110(a)(2), (b)(5).[1] The Governor then appoints one of the candidates, and the appointed member runs to retain the seat in the next general election. ED § 3-110(c)(1). You ask whether this same process applies to incumbents who seek a second term on the Board. You also ask us to explain the Governor's role in the reappointment process.

In our opinion, an incumbent Board member who seeks a second term must be nominated for that term by the Commission and appointed for that term by the Governor. After that, the member must stand for retention at the next general election. The Governor has the sole authority to appoint and reappoint the Board's eight non-student members.[2]

---

[1] Unless otherwise noted, all statutory references refer to the current version of the Education Article, which is reflected in the 2008 Replacement Volume of the Annotated Code of Maryland and the 2012 Supplement.

[2] The ninth member of the Board is a student member, who is appointed through a separate process. *See* ED § 3-110(a)(2), (d). We

# I

# Background

The process of becoming and being retained as a member of the Board consists of three steps, each of which is set forth in a different part of § 3-110 of the Education Article. The first step is the nominating process, which is set forth in subsection (b). The Nominating Commission "select[s] nominees to be recommended to the Governor as qualified candidates for appointment to the [Board]." ED § 3-110(b)(1)(ii). The Nominating Commission holds at least two public hearings and submits to the Governor at least two names for each vacant seat, unless there are fewer applicants for a vacancy, in which case a single nominee will suffice. ED § 3-110(b)(1)(iii) and (5). The Governor then appoints one of the Commission's nominees to the seat. ED § 3-110(a)(2). Appointment is the second step in the process and is set forth in subsection (a) of § 3-110.

The third step in holding board membership—standing for retention before the electorate—is set forth in subsection (c). After appointment, the board member begins to serve immediately, but must stand for "approval or rejection of the registered voters of the county at the next general election." ED § 3-110(c)(1). The board member is placed on the ballot, without opposition. ED § 3-110(c)(3)(ii). If the voters reject the board member or the vote is tied, the position becomes vacant by operation of law "10 days after certification of the election returns." ED § 3-110(c)(4). If the voters retain the board member, he or she may complete the remainder of the five-year term. ED § 3-110(c)(1); *see also* ED § 3-108(c) (establishing five-year term).

You explain that two incumbent board members plan to seek second consecutive terms and that questions have arisen as to whether they must go through the statutory nomination and election process. The provision that governs reappointments is § 3-110(c)(2): "A member of the county board is eligible for nomination and reappointment for a second consecutive term in accordance with the provisions of subsections (a) and (b) of this section." As outlined above, subsections (a) and (b) establish the nominating and appointment process, but not the election process.

---

do not address the process by which the Board's student member is appointed.

At least one member of the Nominating Commission has apparently expressed the view that a board member who seeks a second consecutive term is not subject to the Commission's nomination process.  That view is contrary to the advice that the Board received from its counsel.[3]  The Board's counsel noted that § 3-110(c)(2) explicitly makes the nomination and appointment process set forth in § 3-110(a) and (b) applicable to a reappointment.  The Board's counsel also concluded that § 3-110(c)(2) does not make the election requirement similarly applicable to reappointed members.  Board counsel thereby concluded that if the member is retained and then seeks a second term, the member must repeat the nomination and appointment process pursuant to § 3-110(c)(2).

## II

### Analysis

The interpretation of every statute begins with ascertaining legislative intent.  *See*, *e.g.*, *Wal-Mart Stores*, *Inc. v. Holmes*, 416 Md. 346, 359 (2010).  The starting point, and often the ending point, of this inquiry is the plain language of the statute.  *Id.*  But the plain language of a statute is not to be read in a vacuum.  Instead, "the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Employees Retirement System of the City of Baltimore v. Dorsey*, 430 Md. 100, 113 (2013) (citations and quotation marks omitted).

The statutory provision we interpret here is ED § 3-110(c)(2), which provides that a member "is eligible for nomination and reappointment for a second consecutive term in accordance with the provisions of subsections (a) and (b) of this section."  Because subsections (a) and (b) lay out the nomination and appointment process, the plain language of (c)(2) requires that a board member who seeks a second term must be re-nominated by the Nominating Commission and re-appointed by the Governor.  That much is clear.

Whether a re-appointed member must stand for retention "at the next general election" is less clear.  As Board counsel noted, the statute does not appear to resolve the issue; § 3-

---

[3]  At our request, and in compliance with our policy, you provided the opinion of Board counsel on the issues that are the subject of this opinion.

110(c)(2) refers back to subsections (a) and (b), which address nomination and appointment, but not election. In our view, however, the answer can be found by comparing the current version of § 3-110(c)(1) and (2) to prior versions of that law.

## A. The 2007 Legislation

Until 2007, the statute governing membership on the Board called for a board appointed solely by the Governor. *See* former ED § 3-108(a) (2006 Repl. Vol.). The General Assembly changed that procedure in 2007. While the Governor retained the right to appoint the members, the amended statute established the Nominating Commission and the process by which the Governor selects from the Commission's nominees. *See* 2007 Md. Laws, ch. 454, codified at ED § 3-110(b).

The 2007 law also added the requirement that appointed board members stand for a retention election, but it did so through the enactment of separate provisions for first-term and second-term board members. Subsection (c)(1) applied to "the initial appointment of a member" and required the member to stand for retention to complete his or her "first term." 2007 Md. Laws, ch. 454, codified at ED § 3-110(c)(1). Subsection (c)(2), by contrast, applied specifically to second terms: "A member . . . may serve for a second consecutive term subject to the approval of or rejection by the registered voters of the county at the next general election." *Id*., codified at ED § 3-110(c)(2). Subsection (c)(2) did not, however, refer back to subsections (a) and (b), with the result that a member seeking a second term was not required to go through the nomination and appointment process. So, the process enacted in 2007 required three steps for a new member's first term (*i.e.*, nomination, appointment, retention election) but only one step—the retention election—for a second term.[4]

---

[4] The 2007 legislation included uncodified language providing a separate appointment process for "a member serving a first term on the Anne Arundel County Board of Education on or before June 30, 2008." Such a member:

> (a) (1) shall be eligible to be included in the list of nominees submitted by the School Board Nominating Commission of Anne Arundel County to the Governor to serve a second term when the first term ends; and
>
> (2) may be reappointed by the Governor to the Anne Arundel County Board of Education subject to the approval or rejection of the

## B.  The 2011 Amendments

The General Assembly changed the procedure again in 2011 and gave the statute its current form.  *See* 2011 Md. Laws, chs. 177, 178.  As we see it, the amendments enacted in 2011 effected two principal changes.  First, the amendment added the re-nomination and reappointment process for the second term that is currently set forth in § 3-110(c)(2).  The amendment also altered the provisions relating to the election requirement.  As amended, the statute no longer describes the retention election as a condition of the member's completion of his or her "first term," no longer refers to any election temporally as the general election "following the initial appointment of a member," and no longer contains a separate provision applicable only to a second term.  Instead, the statute contains one election provision that is not specific to either the first or the second term.  In relevant part, the statute now provides:

> Following the appointment of a member of the [Board] by the Governor, a member may serve for the remainder of the member's term . . . subject to the approval or rejection of the registered voters of the county at the next general election.

ED § 3-110(c)(1).  It is this 2011 amendment that we construe here.

When construing the "plain language" of a statute, we are to give effect "to every word, clause, and sentence."  *Fisher v.*

---

registered voters of the county at the next general election; and

(b) as provided in § 3-108(c)(3) of the Education Article, is not eligible to serve another con-secutive term following the second term by a reappointment.

2007 Md. Laws, ch. 454, § 2.  Our Office has previously interpreted this uncodified provision to mean that board members serving as of June 30, 2008, need not be re-nominated by the Commission to serve a second term but are instead automatically placed on the list of nominees submitted to the Governor for appointment.  If appointed, the member must still stand for retention.  *See* Letter of Assistant Attorney General Sandra Benson Brantley to Joshua C. Greene, Chair, Anne Arundel County School Board Nominating Commission (April 8, 2010) ("2010 Advice Letter").

*Bethesda*, 221 Md. 271, 277 (1960). By way of a corollary to that rule, just as every word is presumed to have been used for a purpose, "every word excluded from a statute must be presumed to have been excluded for a purpose." *See* 2A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction § 46.6 (7th ed. 2007); *see also*, *e.g.*, *Briggs v. State*, 413 Md. 265, 277 (2010) (giving weight to the Legislature's use of a particular word "without any qualification").

Read in isolation, the General Assembly's removal of the separate election provision for second-term members would seem to be strong evidence that the General Assembly intended to eliminate the requirement that second-term members stand for retention. But other aspects of the 2011 amendments lead us to the conclusion that removal of the second-term election provision was part of a larger effort to make the election requirement applicable to *all* board members in the same manner. In this respect we find it significant that the General Assembly deleted the words "initial" and "first" from the election provision that had been applicable only to first-term members. Rather than have separate election provisions for first- and second-term members, the statute now has a single provision—subsection (c)(1)—that applies to the election of all board members, whether they are seeking their first term or their second.

To the extent that the current statutory language remains ambiguous on this point, the legislative history, including the fiscal and policy note prepared by the Department of Legislative Services for the General Assembly, confirms the interpretation we reach. *See*, *e.g.*, *Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 629-30 (2010) (inferring legislative intent from the statutory language and the fiscal note). The sponsor of Senate Bill 78, Senator Simonaire, submitted written testimony stating that "[t]he bill was drafted to address the problems documented on April 8, 2010 in the Attorney General's letter in regards to the reappointment process for a 2nd term." *See* S.B. 78, 2011 Leg., Reg. Sess., Hearing Before the Senate Educ., Health and Envt'l Affairs Comm. (Feb. 9, 2011) (written testimony of Sen. Bryan W. Simonaire) ("Simonaire Testimony"). Senator Simonaire testified that the bill was to provide:

> Corrective language to ensure the original intent of the 2007 modification to the Anne Arundel County School Board selection process, specifically:

a. Current law only requires a retention vote of the people to be reappointed to a 2nd term without the Governor's action (see AG letter).

b. Ensure that a school board member seeking a 2nd term is first re-appointed by the Governor and then elected through the existing retention election process of the people.

*Id.* The April 8, 2010 advice letter—described in note 4 above—had concluded, among other things, that a board member who had been nominated and appointed under the process established in 2007 "may serve a second consecutive term subject only to voter approval." 2010 Advice Letter at 4. The purpose of the bill, then, was to "[a]dd language to require the Governor to reappoint the school board member when a 2nd term is sought by an incumbent member." Simonaire Testimony at 1.

A co-sponsor of House Bill 220—the House version of Senate Bill 78—provided similar written testimony about the legislation's "corrective" purpose. Delegate McConkey testified that the 2007 legislation was "ambiguous on the process of reappointment":

> The 2007 change set up a process of vetting prospective members to the school board and making nominations to the Governor for appointment. Unfortunately, *under the current interpretation reappointment is automatic*. HB 200 would require members seeking reappointment to go back through the process.

*See* H.B. 220, 2011 Leg., Reg. Sess., Hearing Before the House Ways and Means Comm., (Feb. 17, 2011) (written testimony of Del. Tony McConkey) (emphasis in original). Delegate McConkey explained the policy rationale behind the proposed amendments:

> The nominating commission is made up of representatives of stakeholders in the public school system. The nominating process is the only means the community has to hold

school board candidates accountable; therefore, it is important that after four years, candidates for reappointment go back through the process, to share their experiences and their vision for their second term.

*Id.*

The Floor Reports and Fiscal and Policy Notes all confirm that the purpose of the 2011 legislation was to provide for a single nominating, appointment, and election process that would be applicable to members seeking first or second terms:

> This bill specifies that a member of the Anne Arundel County Board of Education must be appointed by the Governor from a list of nominees submitted by the School Board Nominating Commission, subject to election by the registered voters of the county at the general election following the member's nomination and appointment, regardless of whether that member is serving a first or second term.

Fiscal and Policy Note (Revised) for Senate Bill 78 (2011) at 1; *see also* Senate Educ., Health and Envt'l Affairs Comm., Floor Report, Senate Bill 78 at 1 (2011) (same); House Ways and Means Comm., Floor Report, House Bill 220 at 1 (2011) (same).

In sum, the legislative history makes clear that the General Assembly enacted the 2011 legislation to make the nomination and appointment steps applicable to second terms, and not to change the requirement that both five-year terms be subject to the approval of the voters of the County. The provisions for the nomination and appointment process, § 3-110(a), (b), and for the election and re-election process, § 3-110(c)(1), now apply to all Board members—whether they are seeking a first or second term—and require that they be nominated (or re-nominated) by the Nominating Commission, appointed (or re-appointed) by the Governor, and retained at the next general election.[5]

---

[5] The 2011 legislation did not carry forward the uncodified language in the 2007 legislation, which we had interpreted, in the 2010 Advice Letter, to mean that Board members serving as of June 30, 2008, need not be re-nominated by the Commission to serve a second term. Given that Board members serve five-year terms, *see* ED § 3-

## III

## Conclusion

In our opinion, an incumbent Board member who seeks a second term must be nominated for that term by the Commission and appointed for that term by the Governor. After that, the member must stand for retention at the next general election. The Governor has the sole authority to appoint and reappoint eight of the Board's eight non-student members.

Douglas F. Gansler
*Attorney General*

Elizabeth M. Kameen
*Assistant Attorney General*

Adam D. Snyder
*Chief Counsel,*
  *Opinions & Advice*

---

108(c)(1), any Board member who was sitting as of June 30, 2008—and, thus, would have been entitled to *automatic* nomination under the 2007 uncodified language—has already gone through the appointment process for a second term. Going forward, then, *all* Board members must be nominated, be appointed, and stand for retention in the manner set forth in the codified statute.